Ezequiela Maldonado, Viuda de Arce, Joaquín, Julio y José de apellidos Arce y Maldonado, demandantes y apelados, *v*. Municipio de Ponce, demandado y apelante.

No. 4215.—*Sometido:* Enero 10, 1928. *Resuelto:* Febrero 28, 1929.

*Fernando B. Fornaris,* abogado del apelante; *Felipe Colón Díaz,* abogado de la apelada.

El Juez Asociado Señor Hutchison, emitió la opinión del tribunal.

El demandado apela de una sentencia condenándole al pago de daños y perjuicios por quebrantamiento de contrato, y alega que la corte inferior cometió error al declarar que el quebrantamiento alegado había sido establecido por la prueba.

En julio de 1913 el Municipio de Ponce vendió un nicho en el cementerio municipal a la viuda de Joaquín Arce. El nicho fué descrito en un certificado de venta otorgádole a la propietaria, así como en un asiento o asientos de los libros llevados por el municipio, como No. 173, ladera izquierda, fila primera. En 1925 el municipio vendió a Gil Velázquez el nicho No. 173, ladera primera, fila derecha. Un asiento en el registro municipal indica que en octubre de 1913 el municipio cedió en arrendamiento a Lila Mayoral de Barnés, por un término de cinco años, el nicho No. 173, vertical, fila tercera. Alguna de la prueba del demandado tendió a demostrar que este nicho fué el que se le vendió a Velázquez en 1925. Los nichos "verticales" y los que se describen como "de ladera" están situados en sitios distintos del cementerio.

Cuando Velázquez fue a hacer su compra, uno de los empleados del departamento de hacienda municipal hizo un 'memorándum de los nichos que había disponibles, para que él escogiera. Velázquez entonces fué al cementerio y escogió un nicho que el encargado del cementerio le indicó era uno

de los que estaban disponibles según el memorándum. El nicho así elegido fué el No. 173. Velázquez no sabía ni cuando hizo su visita al cementerio, ni en el momento del juicio, si el nicho era "vertical" o "de ladera."

Más tarde, el mismo día, el nicho escogido por Velázquez fué abierto por el encargado del cementerio, o por órdenes dadas por éste, y los restos de Joaquín Arce fueron sacados de allí.

Por lo menos uno de los testigos del demandante declaró en el examen directo que el cadáver de Arce había sido colocado en el nicho No. 173, primera fila, "ladera izquierda." Otro testigo de los demandantes declaró que había pintado el nicho de Arce y renovado la inscripción del mismo unos seis meses antes de la remoción de los restos. Al ser repreguntado este testigo, el letrado del demandado obtuvo de él la información adicional de que el nicho pintado por él fué el No. 173, primera fila, "ladera izquierda." El albañil que había clausurado el nicho de Velázquez en 1925, después de removerse los restos de Arce y de enterrarse otro cadáver en él, dijo, como testigo del demandado, que no recordaba el número del nicho pero que estaba situado en la primera fila de los "de ladera."

El certificado de venta fué extendido a Velázquez, y los asientos correspondientes relativos a la misma fueron hechos varias semanas después de abrirse el nicho de Arce y de enterrarse allí otro cadáver. Nada hay que demuestre que había números duplicados o series duplicadas de números entre los nichos conocidos como "de ladera," o que estos nichos estuviesen agrupados en secciones designadas por letras, por números o en alguna otra forma. La prueba del demandado tiende a demostrar solamente si el nicho entregado a Velázquez era o no el mismo que le fué vendido, o que se intentó venderle. No creemos necesario resolver esa cuestión por ahora.

La contención principal en el argumento del apelante es

que la prueba de los demandantes no establece el hecho de una doble venta. Más específicamente, la contención es que la prueba no identifica suficientemente el nicho vendido a Velázquez como el que había sido comprado anteriormente por los demandantes. Esto, desde luego, asume la necesidad de demostrar una doble enajenación como base del derecho a percibir indemnización por concepto de daños y perjuicios. Sin embargo, ésa no parece haber sido la teoría de la demanda ni de la corte inferior. En realidad la venta a Velázquez ni siquiera se menciona en la demanda, ni en las conclusiones de la corte sentenciadora.

El fundamento de la acción fué la profanación por parte del demandado de la tumba previamente vendida y entregada a los demandantes. Cuando el municipio abrió el nicho y trasladó los restos de allí, no solamente cometía un acto dañoso (tort), sino que también quebrantaba el contrato de compraventa. La venta a Velázquez fué sólo un eslabón en la cadena de acontecimientos que conducen y explican el quebrantamiento del contrato anterior celebrado con los demandantes. Incidentalmente servía para conectar al municipio con el acto del encargado del cementerio, y para establecer así un quebrantamiento del contrato, al igual que la comisión de un acto dañoso (tort). Lo que en la demanda se alegaba, y lo que el juez sentenciador halló, fué en esencia que el municipio vendió por un precio de quince dólares, y entregó a los demandantes, cierto nicho marcado con el No. 173, primera fila, "ladera izquierda," del cementerio de Ponce; que el cadáver de Joaquín Arce fué enterrado en el citado nicho y que posteriormente el municipio removió los restos de dicho Arce y permitió que se enterrara otro cadáver en la tumba así profanada.

No hay campo para una duda razonable respecto a lo correcta de esta conclusión. No necesita refuerzo para sostener la sentencia. Cualquier especulación por parte del juez sentenciador respecto a si el nicho vendido o que se trató

de vender a Velázquez fué el mismo nicho previamente vendido y entregado a los demandantes, o respecto a si el nicho entregado a Velázquez fué o no el comprado por él, o si cualquier error en lo referente a la entrega fué cometido por el encargo del cementerio solamente, o como resultado de la negligencia o descuido de algún otro empleado, tal vez pudo haber obscurecido la cuestión principal, pero no hubiese establecido ninguna base satisfactoria para llegar a una conclusión distinta.

El encargado del cementerio falleció antes del juicio y se permitió que varios testigos declararan respecto a admisiones o manifestaciones hechas por él. Las manifestaciones en cada caso eran al efecto de que el desenterramiento había sido autorizado por el municipio. Toda esta prueba era superflua.

Era el deber de cierto empleado municipal conservar las constancias y suministrar los datos demostrativos de los nichos que estaban disponibles en cualquier momento en que se fuese a efectuar alguna venta de ellos. Los recibos o certificados de venta expedidos por el tesorero municipal estaban basados en la información así suministrada. Este empleado, declaró como testigo del demandado que el nicho No. 173, vertical, aparecía en la lista que el suministró a Velázquez, y que le dió a éste dicha lista a fin de que el nicho escogido por él pudiese ser preparado por el encargado del cementerio. Esto se hizo con entero conocimiento de que tal preparación envolvía la remoción de restos humanos. El certificado expedido posteriormente por el tesorero municipal describía además el nicho vendido a Velázquez como "de ladera primera, fila derecha."

La declaración de este testigo también demuestra que para los fines de venta o de arrendamiento, nichos que habían sido previamente arrendados, ya estuviesen ocupados o no, eran considerados como disponibles. Después de desenterrados, los restos de Arce y los de un tal Agustín Burgos

fueron colocados en dos cajas de pino y enterrados en otra parte del cementerio. Ninguna de las cajas fué marcada para poder ser identificadas. El abrir nichos y el traslado de restos humanos era algo no poco corriente en el cementerio de Ponce. Todas las circunstancias tienden a la conclusión de que el encargado del cementerio actuaba dentro del límite de su empleo.

De un permiso expedido por un oficial de sanidad local aparece claramente que no había error alguno respecto a la identidad de los restos. Este permiso fué presentado como prueba por el demandado. Va dirigido al encargado del cementerio civil y le autoriza a él, Felipe Alvira, a remover los restos de Joaquín Arce. El nombre, el apellido y la fecha del fallecimiento mencionados en el permiso correspondían con el nombre, apellido y la fecha del fallecimiento que aparecían pintados en el nicho de Arce, según fué descrito por los testigos de los demandantes.

La exclusión de cualquier admisión por parte del encargado del cementerio sobre la autorización recibida del municipio, ni hubiese producido un resultado distinto en la corte inferior, y el error, de haberse cometido, de admitir tal prueba con la objeción del demandado, no fué perjudicial.

■ Otra contención del apelante es que la corte inferior cometió error al conceder indemnización por sufrimientos morales, así como una partida independiente de mil dólares que no estaba relacionada en forma alguna con la cuestión de los daños por sufrimientos morales.

La teoría del apelante es que en una acción fundada en quebrantamiento de contrato, en que solamente están envueltos daños nominales, y en ausencia de daños materiales, el conceder una indemnización por sufrimientos morales, no puede ser sostenida. El argumento asume la necesidad de demostrar los gastos reales incurridos por los demandantes como resultado del quebrantamiento y concluye diciendo que en ausencia de tal demostración no hay pérdida pecuniaria.

Los demandantes pagaron quince dólares por el nicho comprado por ellos en 1913, y Velázquez pagó veinticinco dólares por el mismo nicho, o por uno similar, en 1925. Tales sumas, aunque pequeñas, no pueden ser clasificadas como meros daños nominales. Fuera de cualquier cuestión de valor especial o sentimental, a los demandantes se les privó de la posesión de bienes por los cuales ellos habían pagado algo más que un mero precio nominal. En ausencia de cualquier indicación en contrario, podemos asumir, sin resolverlo, que el valor del nicho o la posesión del mismo, en la única forma posible a los demandantes, sirve para hacer la debida apreciación de los daños. Nuestro único objeto en el presente caso es demostrar que *prima facie* y de conformidad con la teoría del caso del apelante, la pérdida pecuniaria no fué meramente nominal.

El letrado del apelante admite expresamente que la regla invocada no sería aplicable a una acción *ex delicto*. En el presente caso el quebrantamiento de contrato consistió en la comisión de un acto ilegal (*tort*). Bajo estas circunstancias no creemos necesario examinar y discutir casos más o menos aislados que no se demuestra envolvían ningún elemento de daño (*tort*), ni que representen el criterio moderno de las autoridades.

La ley en esta jurisdicción fué establecida más de veinte años ha en el caso de *Clemadell* v. *Municipio de Juana Díaz*, 14 D.P.R. 626, y nada hallamos en el alegato del apelante en el presente caso que justifique ahora una desviación de la doctrina de dicho caso.

■ Convenimos con el apelante en que la suma total de $3,000 concedida a los demandantes por la corte inferior fué excesiva. Tomando todo en consideración creemos que novecientos dólares en la proporción de seiscientos para la viuda y cien dólares para cada uno de los hijos, es suficiente.

La sentencia apelada *debe ser modificada de conformidad*, y así modificada se confirma.