ELADIA CAMACHO VDA. DE ALUSTIZA y LUIS CAMACHO, demandantes y apelantes, *v.* IGLESIA CATÓLICA, APOSTÓLICA Y ROMANA, DIÓCESIS DE PONCE, demandada y apelada.

Núm. 10378.—*Sometido:* Marzo 8, 1951. *Resuelto:* Marzo 30, 1951.

*Aníbal Padilla,* abogado de los apelantes; *Fernando Zapater Martínez* y *Antonio Zapater Cajigas,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Eladia Camacho Vda. de Alustiza y Luis Camacho instaron demanda sobre quebrantamiento de contrato contra la Iglesia Católica, Apostólica y Romana, Diócesis de Ponce.[1] Alegaron en ella sustancialmente que la demandada es dueña de un trozo de terreno situado en el barrio Canas de Ponce que dedica a cementerio, habiéndole conferido la conservación, administración y seguridad del mismo a la Congregación de la Misión de Padres Paúles;[2] que la demandante Eladia Camacho contrajo matrimonio con Julio Alustiza el 2 de mayo de 1939, luego de haber convivido con éste por más de 25 años; que el codemandante Luis Camacho era hijo de crianza de Julio Alustiza, convivió siempre con éste y existieron entre ellos verdaderas relaciones de padre e hijo; que Julio Alustiza falleció en Ponce el 4 de agosto de 1939 y a los fines de dar sepultura a su cadáver y de conservar para siempre allí sus restos, los demandantes adquirieron por compra a la demandada Iglesia Católica el nicho número 48 de la galería conocida por San Francisco del Cementerio San Vicente de Paúl, procediendo a dar sepultura en el mismo al cadáver de Julio Alustiza; que a pesar de haber vendido el referido nicho a los demandantes, la demandada Iglesia Católica vendió el 14 de agosto de 1944

---

[1] En el curso de esta opinión nos referiremos de ahora en adelante a la demandada como la Iglesia Católica.

[2] Una demanda anterior instada contra dicha Congregación y otros fué declarada sin lugar por la Corte de Distrito de Ponce en 27 de enero de 1948, confirmándose por nosotros en 4 de mayo de 1949 la sentencia así dictada. Véase nuestra opinión *Per Curiam* de esa fecha.

el mismo nicho a otra persona, y en 23 de diciembre de 1945 esa persona, con la autorización de la Congregación administradora hizo abrir el mencionado nicho, extrajo los restos de Julio Alustiza y colocó en el mismo el cadáver de Cecilia García Vda. de Prieto, sin que los demandantes en momento alguno dieran su consentimiento para ello; que el Día de las Madres del año 1947([3]) los demandantes fueron a visitar la tumba de Julio Alustiza y allí por primera vez se enteraron de que los restos de éste habían sido removidos del aludido nicho, lo que ocasionó a la demandante Eladia Camacho Vda. de Alustiza grandes tormentos y sufrimientos mentales, decaimiento nervioso y pérdida de su salud, y al codemandante Luis Camacho grandes dolores y angustias mentales. Se reclaman $10,000 para la primera y $5,000 para el segundo.

La Iglesia Católica contestó negando todos y cada uno de los hechos alegados en la demanda y suscitando las defensas de: (1) falta de causa de acción; (2) prescripción; (3) cosa juzgada; (4) indebida acumulación de partes; y (5) eliminación de las alegaciones de daños, consistentes en angustias, tormentos y sufrimientos mentales por no proceder éstos, a su juicio, en acciones sobre quebrantamiento de contrato.

Luego de innumerables cuestiones de derecho, planteadas por una y otra parte, que se hace innecesario reseñar, fué el pleito a juicio, dictando sentencia el Tribunal de Distrito de Puerto Rico, Sección de Ponce, en 29 de agosto de 1950, declarando sin lugar la demanda, con costas. Concluyó que los daños y perjuicios a que tendrían derecho los demandantes son aquéllos que fueron previstos o que hubieran podido preverse al tiempo de constituirse la obligación o que sean consecuencia necesaria de su falta de cumplimiento; que no hubo incumplimiento del contrato por parte de la demandada, toda vez que vencido el arrendamiento del nicho, sin que los demandantes perfeccionaran el contrato de compraventa, la

---

([3]) La prueba demuestra que se trataba del día 12 de mayo de 1946.

demandada quedaba relevada de toda responsabilidad u obligación de preservar para los demandantes la posesión del mismo; que aún asumiendo que la demandada violara el contrato celebrado con los demandantes, éstos no probaron haber sufrido perjuicio alguno ni han puesto a la corte en condiciones de tasar justamente los alegados daños sufridos referente al decaimiento nervioso y pérdida de salud; y finalmente que los casos de *Valedón* v. *Municipio de Ponce,* 46 D.P.R. 547 y *Conde* v. *Municipio de Ponce*, 48 D.P.R. 587, no eran de aplicación a la situación de hechos del presente caso. Apelaron los demandantes y sostienen ahora que la sentencia es contraria a la prueba y a derecho.

De la transcripción surge de manera inconcusa que Julio Alustiza falleció en la ciudad de Ponce el 4 de agosto de 1939 y que fué enterrado en el nicho número 48 de la galería conocida por San Francisco del Cementerio San Vicente de Paúl, propiedad de la demandada Iglesia Católica y administrado por la Congregación de los Padres Paúles; que el 5 de agosto del indicado año la citada Congregación cedió en arrendamiento a los demandantes por término de cinco años el nicho en cuestión dándoles opción de comprar el mismo durante ese período, pero pudiendo la demandada rescindir el contrato si al expirar los cinco años los demandantes no habían pagado el precio total del mismo, fijado originalmente en $60 y rebajado más tarde a $50; que hasta el 23 de junio de 1940 los demandantes habían abonado a cuenta la suma de $25, efectuando en 21 de marzo de 1944 un pago adicional de $5, por el cual se extendió por el Padre Marijuán, en su carácter de encargado del cementerio el correspondiente recibo a favor de Luis Camacho; (4) que con posterioridad al

---

(4) En el récord de los nichos llevado por el administrador de la Congregación aparecía una constancia al efecto de que el Padre Morondo había rebajado el precio del nicho a los demandantes de $60 a $50; que para el 23 de junio de 1940 los demandantes sólo debían la suma de $25; y que esa nota fué escrita por el Padre De La Guerra, quien era el encargado para aquel entonces. (Cuando en marzo 21 de 1944 el demandante Camacho pagó los $5 a que hacemos referencia más arriba ya el Padre De La Guerra había muerto.)

5 de agosto de 1944 y habiendo vencido ya el término del arrendamiento, el Padre Marijuán, en su carácter de administrador notificó a la familia Alustiza de tal hecho(5) ; que en respuesta a esa notificación acudió ante el Padre Marijuán un miembro de dicha familia y satisfizo $30 adicionales, extendiéndoseles entonces recibo de saldo y otorgándose la propiedad del nicho a la "Familia Alustiza"; que si bien el finado Julio Alustiza pertenecía a la citada familia Alustiza los componentes de ésta no estaban en buenas relaciones con los demandantes Eladia y Luis Camacho y nada informaron a éstos sobre la venta del nicho a favor de ellos; que el Padre Marijuán, después de hacérsele el pago de los $30 a nombre de la susodicha familia se marchó para San Juan sin hacer en los records del cementerio el asiento correspondiente, indicativo del recibo de dicha cantidad y del título de propiedad a favor de la Familia Alustiza; que así las cosas, en 22 de noviembre de 1944 Luis Camacho, quien desconocía el hecho de que el nicho número 48 ya había sido vendido a una tercera persona, efectuó un pago adicional de $10 a cuenta del referido nicho, extendiéndose por el administrador un recibo por esa cantidad a favor de éste y apareciendo en el registro del cementerio, en relación con el indicado nicho, una nota que dice: "Sigue debiendo $10"; que en noviembre 5 de 1945 se efectuó por Luis Camacho otro pago de $10 por el aludido concepto, extendiéndosele entonces un recibo por esa suma a favor de Eladia Camacho Vda. de Alustiza y haciéndose constar que con el recibo de esa cantidad la deuda quedaba saldada y que la propiedad del nicho pasaba a Luis Camacho.

También aparece de los autos que en 23 de diciembre de 1945 falleció la señora Cecilia García Vda. de Prieto, suegra de una hermana del finado Julio Alustiza; que con tal motivo un miembro de la Familia Alustiza se presentó ante el Padre Azurmendi, nuevo administrador de la Congregación y como

---

(5) Creyó que como el cadáver inhumado lo había sido el de Julio Alustiza su deber era notificar a la familia Alustiza y no a los aquí demandantes.

tal a cargo del cementerio, con el recibo de propiedad extendido a nombre de esa familia y solicitó autorización para enterrar en el nicho número 48 el cadáver de la señora García Vda. de Prieto; que el nicho fué abierto y los restos de Julio Alustiza exhumados, colocándose éstos primeramente por el celador del cementerio en un saco vacío de cemento y luego en una bolsa de tela, que fué a su vez puesta dentro del mismo nicho; que hubo la inhumación del cadáver de la señora García Vda. de Prieto en el nicho 48, tapiándose luego el mismo y poniéndosele a éste una nueva lápida que dice así: Cecilia García Vda. de Prieto—1862–Diciembre 23, 1945—Restos de Julio Alustiza—Agosto 4, 1939; y que la lápida de Julio Alustiza que el nicho tenía—regalada por la Legión Americana— fué trasladada a la casa del Dr. Justo Prieto, hijo de la finada, y puesta allí desde entonces en un garaje.

Los demandantes también ofrecieron prueba tendiente a demostrar que el Día de las Madres del año 1946 la demandante Eladia Camacho Vda. de Alustiza y su hijo Luis Camacho fueron al Cementerio Católico de Ponce a visitar la tumba de Julio Alustiza y que al así hacerlo se enteraron por primera vez de la exhumación de los restos de Julio Alustiza, de la inhumación en el mismo nicho del cadáver de la señora García Vda. de Prieto, etc; que con motivo de todo ello la demandante ha estado enferma desde entonces, padece de presión arterial alta, de albúmina y de nerviosidad, y casi no puede trabajar, y que el demandante Luis Camacho consideraba a Julio Alustiza como su verdadero padre, ya que su señora madre y éste vivieron juntos desde que él nació y debido a la enfermedad de su madre apenas puede trabajar por tener que atenderla. Ante esa situación, ¿tienen los demandantes derecho a recobrar los daños reclamados? Veamos:

Nuestro Código Civil dispone en sus artículos 1054 y 1060, ed. de 1930, lo siguiente:

"Artículo 1054.—Quedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de

sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieren al tenor de aquéllas."

"Artículo 1060.—Los daños y perjuicios de que responde el deudor de buena fe son los previstos o que se hayan podido prever al tiempo de constituirse la obligación y que sean consecuencia necesaria de su falta de cumplimiento.

" . . . . . . . "

En el presente caso, como se ha visto, la demandada cedió en arrendamiento, con opción de compra, un nicho a los demandantes. El precio establecido lo fué la suma de $50, de la cual los demandantes al vencerse el período de 5 años establecido en el contrato tan sólo habían pagado la cantidad de $30. No habiendo los demandantes ejercitado su derecho de opción dentro del período indicado, la demandada, de acuerdo con la ley, estaba facultada para rescindir el contrato. Artículo 1077 del Código Civil, ed. de 1930. (⁶) Véase también *Federal Land Bank* v. *Echeandía*, 48 D.P.R. 320. Empero, la demandada no hizo tal cosa. En su lugar, cometió el error (1) de notificar el hecho del vencimiento del contrato a personas distintas a aquéllas con las cuales había contratado, (2) el de aceptar de éstas $30 en pago del saldo del precio del nicho; (⁷) (3) el de dar recibo de propiedad a esas personas; y (4) el de no asentar esa venta en los records del cementerio. Además, lejos de rescindir el contrato preexistente con los demandantes, posteriormente aceptó dos pagos de éstos, al efectuarse el último de los cuales dió a los demandantes el recibo de rigor y el título correspondiente al nicho. La aceptación de esos pagos por la demandada equivalió a una prorrogación del término original del contrato de arrendamiento y opción y finalmente a la consumación del con-

---

(⁶) El artículo 1077 del Código Civil, ed. de 1930, provee en lo aquí pertinente:

"La facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere lo que le incumbe."

(⁷) Si el valor del nicho había sido rebajado a $50 y la demandada ya había recibido a cuenta la suma de $30, sólo se le adeudaban $20.

trato de compraventa con los demandantes. No obstante ello, un mes 18 días más tarde la demandada autorizó la exhumación de los restos de Julio Alustiza y la inhumación del cadáver de la señora García Vda. de Prieto. Hubo en su consecuencia una doble venta del mismo nicho. Por tanto, se hace necesario determinar, a los fines del caso de autos, cuál de los adquirentes resulta ser en derecho el dueño del nicho y, por ende, en caso de ser los demandantes, si ha habido por parte de la demandada un quebrantamiento de los términos del contrato.

Según el artículo 1362 del Código Civil, ed. de 1930:

"Si una misma cosa se hubiese vendido a diferentes compradores, la propiedad se transferirá a la persona que primero haya tomado posesión de ella con buena fe, si fuere mueble.

"Si fuere inmueble, la propiedad pertenecerá al adquirente que antes la haya inscrito en el registro.

*"Cuando no haya inscripción, pertenecerá la propiedad a quien de buena fe sea primero en la posesión;* y faltando ésta, a quien presente título de fecha más antigua, siempre que haya buena fe." (Bastardillas nuestras.)

Se trata incuestionablemente de un inmueble, y como en los autos no hay prueba de que ninguna de las ventas fuese inscrita, es menester resolver, por ende, cuál de los dos adquirentes entró primero en posesión. Sin duda alguna lo fueron los demandantes, ya que su posesión data desde el 5 de agosto de 1939, fecha en que dieron sepultura en el nicho al cadáver de Julio Alustiza y en que celebraron con la demandada el contrato de arrendamiento con opción de compra. Cuando en 5 de noviembre de 1945 se consumó el contrato, los demandantes aún estaban en posesión. Por otra parte, no hay prueba en los autos de que la Familia Alustiza tomara posesión del nicho antes del 23 de diciembre de 1945.

Además, es innegable que hubo un quebrantamiento del contrato por parte de la demandada. Tal quebranta-

miento consistió en los hechos que ya hemos expuesto con lujo de detalles. Conforme dijimos en *Maldonado* v. *Municipio de Ponce*, 39 D.P.R. 247, 250, "El fundamento de la acción fué la profanación por parte del demandado de la tumba previamente vendida y entregada a los demandantes. Cuando el municipio abrió el nicho y trasladó los restos de allí, no solamente cometía un acto dañoso (*tort*), sino que también quebrantaba el contrato de compraventa. La venta a Velázquez fué sólo un eslabón en la cadena de acontecimientos que conducen y explican el quebrantamiento del contrato anterior celebrado con los demandantes. . . ." Habiendo habido un incumplimiento del contrato la demandada, a tenor de lo preceptuado por los artículos 1054 y 1060 del Código Civil, supra, viene obligada a responder de daños y perjuicios, una vez probados éstos.

 Como de prosperar alguna de las defensas suscitadas por la demandada, la demanda tendría siempre que ser declarada sin lugar y la sentencia confirmada, procederemos a discutir tales defensas a grandes rasgos. La demanda, en los términos en que está concebida, claramente aduce una causa de acción. Tratándose de una reclamación de daños y perjuicios *ex contractu*, la acción no había prescrito, pues conforme resolvimos en *Segarra* v. *Vivaldi*, 55 D.P.R. 160, las acciones de esta naturaleza prescriben a los 15 años. [8] Tampoco procedía la defensa de cosa juzgada, toda vez que no había identidad de personas. *Ex parte Soto; Rodríguez, Int.*, 71 D.P.R. 547; *Muñoz* v. *Pardo*, 68 D.P.R. 612, 616; *Meléndez* v. *Cividanes*, 63 D.P.R. 4. Cuando como resultado del quebrantamiento de un contrato varias personas alegan haber sufrido daños, no puede decirse que al demandar éstas conjuntamente hay indebida acumulación de partes. Regla

---

[8] Los demandantes tuvieron conocimiento en 12 de mayo de 1946 de la profanación del nicho y la demanda del presente caso fué radicada en 23 de mayo de 1949. Véanse artículos 1864 y 1869 del Código Civil, ed. de 1930.

19 (a) de las de Enjuiciamiento Civil (⁹) La moción elimi-
natoria tampoco procedía. Si bien es cierto que en los casos
de *González Mena* v. *Dannermiller Coffee Co.*, 48 D.P.R. 608;
*Díaz* v. *Cancel*, 61 D.P.R. 888; y *Díaz* v. *Palmer*, 62 D.P.R.
111, resolvimos que las angustias mentales no son daños a
ser indemnizados en acciones basadas en incumplimiento de
contrato, ello fué así en todos esos casos debido a que, con-
forme indicamos, tales daños no pudieron preverse al tiempo
de constituirse la obligación, ni eran consecuencia necesaria
de su falta de cumplimiento.

En este caso hubo, como ya hemos dicho, un in-
cumplimiento del contrato por parte de la demandada y aun-
que el título de la propiedad se hizo figurar a nombre de
Luis Camacho, la demandada expidió recibos tanto a nombre
de éste como de Eladia Camacho y ambos fueron considerados
como adquirentes del nicho número 48. En un contrato de
arrendamiento y compraventa de un nicho como el aquí en-
vuelto, los daños que por concepto de sufrimientos y angus-
tias mentales reclaman los demandantes pudieron ser pre-
vistos por la demandada y son claramente consecuencia nece-
saria de la falta de cumplimiento del contrato. *Serrano* v.
*Gobierno de la Municipalidad de Río Piedras*, opinión *Per
Curiam* de 29 de noviembre de 1950; *Valedón* v. *Municipio de
Ponce*, supra; *Maldonado* v. *Municipio de Ponce*, supra, y
*Clemadell* v. *Municipio de Juana Díaz*, 14 D.P.R. 626. Ya
hemos expuesto la prueba de los daños ofrecida en favor de
cada uno de los demandantes. Asimismo, que si bien hubo
una profanación del nicho en la forma detallada expuesta en
el curso de esta opinión, los restos de Julio Alustiza fueron
nuevamente colocados dentro del mismo y que se hizo cons-
tar en la lápida que esos restos estaban allí. Esto distingue

---

(⁹) La Regla 19 (a) provee en lo esencial:

"(a) Acumulación Necesaria.—Sujeto a las disposiciones de la Regla
23 y de la subdivisión (b) de esta Regla, las personas que tuvieren un
interés común, se harán partes y acumularán como demandantes o deman-
dadas, respectivamente. . . ."

·el caso de autos de aquéllos en que la profanación ha llegado al extremo de desaparecer los restos exhumados. Por ende,· la indemnización a concederse en este caso debe ser menor.

*Debe revocarse la sentencia apelada y en su lugar dictarse otra condenando a la demandada a pagar a la demandante Eladia Camacho Vda. de Alustiza*([10]) *la suma de $1,000 y al demandante Luis Camacho la cantidad de $500, con costas a dicha demandada, más la suma de $300 para honorarios de abogado.*

---

([10]) Aunque se ofreció en evidencia copia del asiento parroquial del matrimonio, la misma no fué admitida en evidencia. La corte actuó acertadamente al así resolver. Artículo 85 del Código Civil, ed. 1930. Copia del acta de matrimonio debidamente certificada por el encargado del Registro Demográfico nunca fué ofrecida en evidencia.