SALVADOR RIVERA RUIZ ET AL., demandantes y recurridos, *v.* MUNICIPIO DE SAN JUAN, demandado y recurrente.

*Número:* R-67-166       *Resuelto:* 18 de enero de 1968

*J. R. Lebrón Velázquez, Edwin Andújar* y *Josefina Riollano,* abogados del recurrente; *J. M. Toro Nazario,* abogado de los recurridos.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

PER CURIAM: Expedimos un auto para revisar la sentencia dictada por la Sala de San Juan del Tribunal Superior condenando al Municipio de San Juan a pagar a los hijos, nietos y hermanos de doña María Ruiz Ocasio determinadas sumas de dinero en concepto de daños y perjuicios.

Los hechos en que se fundamenta la sentencia fueron estipulados por las partes al comenzarse la vista del caso. Transcribimos del récord dicha estipulación:

"Lic. Lebrón Velázquez:

Señor Juez, el 14 de enero de 1960, don Salvador Rivera Ruiz, uno de los demandantes, representados en la acción, entró en una relación contractual con el Municipio de San Juan, mediante un contrato de arrendamiento de una fosa en el antiguo cementerio de Monacillo del sector de Río Piedras, donde se enterró el cadáver de doña María Ruiz, que era la señora madre de este demandante. Este contrato de arrendamiento fue ejercitado por las partes y entonces procedieron allí a ubicar encima de la fosa, una identificación con el nombre de la interfecta, de tipo removible, con un tubo, porque no tenía ninguna tumba en concreto.

Hon. Juez:

¿No había panteón?

Lic. Lebrón Velázquez:

No había panteón.

Hon. Juez:

¿Lo que se arrendó fue el pedazo de tierra?

Lic. Lebrón Velázquez:

Sí, señor. Posteriormente, el Municipio de San Juan, en un terreno cercano, en el mismo cementerio, el 1ro. de marzo de 1962, vendió un terreno al Sr. Roberto Belber para enterrar allí el cadáver de don Vicente Belber. En ese mismo sitio, los familiares del Sr. Belber edificaron entonces un panteón en concreto con una lápida y esa estructura y esa fosa invadieron parcialmente el terreno que había sido arrendado a don Salvador Ruiz Rivera, Rivera Ruiz, para el arrendamiento [sic] de su señora madre, María Ruiz. En una ocasión, don Salvador Rivera Ruiz y algunos familiares de él, acudieron a la tumba de su señora madre para ofrecer sus respetos, en un acto conmemorativo, y descubrieron que no estaba en el sitio donde ellos la habían dejado, el objeto removible que identificaba la tumba de doña María Ruiz. Notificaron inmediatamente a las Autoridades Municipales y se instruyó una investigación por el Municipio de San Juan. Posteriormente, la División Legal del Municipio de San Juan, la Lcda. Adelaida Vicente de Souffront, citó al Lic. Toro Nazario y a algunos familiares de doña María Ruiz, entre ellos, don Salvador Rivera Ruiz, la persona a quién se le hizo el contrato de arrendamiento. Conforme a la disposición quinta del contrato de arrendamiento, que es similar en su texto a la del contrato de arrendamiento, el Municipio de San Juan procedió a remover el cadáver del Sr. Belber, y lo ubicó en otro sitio, por su cuenta, con cargos al Municipio de San Juan. Abierto entonces el panteón, conforme a la autoridad que le da el contrato, que dice: 'que si en cualquier momento fuese necesario alterar la localización o eliminar la fosa que existe sobre la parcela vendida o arrendada, el Municipio de San Juan, se reserva el derecho a hacerlo, como una condición expresa y esencial de esta venta y motivada por razones de orden público y lo hará conforme a las leyes de Sanidad', citó al compañero Toro Nazario y a los familiares de doña María Ruiz, acudió allí también la Lcda. Souffront y el ingeniero Luis A. Brignoni, con el propósito de demostrarle a ellos, que no había habido ninguna intención del Municipio de San Juan de intervenir con el predio que le había sido arrendado, que esa edificación al lado, no era del Municipio de San Juan, sino de la familia de don Vicente Belber

y procedieron a hacer una apertura en la fosa de doña María Ruiz para demostrar que el cadáver era el de la señora madre de don Salvador Rivera Ruiz y así se hizo, en presencia del compañero Toro Nazario y de las demás personas que mencioné. El ingeniero Luis A. Brignoni, ordenó que se procediese a tapar la fosa donde está el cadáver.

Hon. Juez:

¿Después de sacar el cadáver?

Lic. Lebrón Velázquez:

No se sacó nunca el cadáver. Sencillamente se abrió la tierra y se les enseñó a ellos.

Hon. Juez:

¿Se destapó la caja?

Lic. Lebrón Velázquez:

Estaba el ataúd allí. Se hizo una apertura y comprobaron a su satisfacción que efectivamente era el cadáver de la Sra. Ruiz.

Hon. Juez:

La demanda, creo que dice, que se sacó la caja y que se destapó el ataúd y que estuvo expuesto un número de horas y que se vió un cadáver que casi no se podía identificar.

Lic. Lebrón Velázquez:

No, Señor Juez. Se dejó el cadáver en el sitio que estaba, en la caja, y en la ubicación, sin destapar la caja. Se destapó la caja para mostrarle a ellos que era el cadáver, para que por las señas personales, pudieran ellos comprobar la buena fe del municipio de San Juan. Sin embargo, una vez tapada la caja y la fosa, en la parte inferior, se dejó el promotorio [sic] de tierra al lado, no se tapó totalmente, porque la intención del Municipio de San Juan fue ofrecerle a los familiares la fosa que habían adquirido. No se pudo llegar a ningún entendido y la contención entonces, de don Salvador Rivera Ruiz, es que acudió allí diez y siete días después y que vió que todavía no habían tapado la tumba.

Hon. Juez:

Pero, taparon la caja, ¿lo que no taparon es la superficie del terreno?

Lic. Lebrón Velázquez:

Sí, señor. El señor admite que es así, que le dió la impresión que era que no estaba tapada la tumba. Señor Juez, con motivo

de estos hechos así narrados al Honorable Tribunal, la parte demandante entiende que ha sufrido daños morales y angustias mentales. Ambas partes, suplicamos al Tribunal, que haga una determinación conforme a esa estipulación y que dicta la providencia que estime.

Hon. Juez:

¿Esa es la estipulación?

Lic. Toro Nazario:

Es la estipulación.

Hon. Juez:

A base de eso, voy a resolver. Sometido. Transcríbase de acuerdo con las instrucciones previas expuestas por mí." (T.A. págs. 24 a 30.)

A base de esa estipulación de hechos el tribunal sentenciador formuló las siguientes conclusiones de derecho:

"I.—El dueño de un terreno dedicado a cementerio que luego de haber arrendado un pedazo de terreno para que el mismo sea utilizado para enterrar el cuerpo de una persona, que permita que se profane la tumba previamente arrendada, comete un acto dañoso (tort) y también quebranta el contrato de arrendamiento y viene obligado por ese quebrantamiento a responder en daños y perjuicios. Camacho vs. Iglesia Católica, 72 D.P.R. 353.

II.—Arrendado un nicho en un cementerio, los daños que por concepto de sufrimientos y angustias mentales por su profanación por parte del arrendador reclamen los arrendatarios del mismo son de los que pueden ser previstos por el arrendador y son claramente consecuencia necesaria de su quebrantamiento del contrato de arrendamiento." (T.A. págs. 34 y 35.)

Distinto a lo que ocurrió en el caso de *Camacho*, supra, la prueba no establece un quebrantamiento del contrato de arrendamiento por parte del Municipio de San Juan, ni tampoco, que la tumba de la señora María Rivera Ruiz fuera profanada.

No habiendo base para concluir que el Municipio demandado-recurrente haya incurrido en algún acto dañoso (*tort*)

*la sentencia dictada en su contra será revocada y se dictará otra declarando sin lugar la demanda.*