DOLORES DÍAZ TORRES, demandante y recurrente, *v.* ISMAEL RIVERA, demandado y recurrido.

*Número:* R-66-375    *Resuelto:* 9 de octubre de 1968

*Harry B. Llenza,* abogado de la recurrente; *Víctor A. Coll,* abogado del recurrido.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

En el año 1942, la demandante recurrente Dolores Díaz heredó de su padre una finca urbana sita en la Calle José de Diego de Río Piedras. Su hermana María del Rosario Díaz heredó, en igual fecha y también del mismo causante, una propiedad contigua a la de Dolores. Posteriormente Ismael Rivera, el demandado recurrido, compró la propiedad que pertenecía a María del Rosario y pasado algún tiempo destruyó la casa que allí existía para hacer un edificio de varias plantas.

Por el solar que compró Ismael Rivera cruzaba un tubo por el cual pasaban las aguas negras de ambas casas—la

que compró y destruyó Rivera y la que pertenece a la demandante. Dicho tubo había sido instalado allí para los fines ya mencionados por el padre de las hermanas Díaz de quien, como hemos dicho, éstas heredaron sus respectivas propiedades.

En 8 de febrero de 1962 la demandante Dolores Díaz presentó en el Tribunal Superior, Sala de San Juan, una Acción Confesoria de Servidumbre y de Daños y Perjuicios contra Ismael Rivera, en cuya primera causa de acción expuso, en esencia, lo antes dicho y además lo siguiente:

"Que dichos predios pertenecieron a su padre don Pedro Díaz Correa, quien construyó dichas casas y estableció una servidumbre de acueducto en la cual resultó predio sirviente el predio donde radica la casa número 104, en el cual existía como signo aparente de dicha servidumbre, parte de la cañería visible, la cual ha estado en uso por más de 20 años.

Actualmente el demandado Ismael Rivera compró el predio sirviente y en el mismo se propone construir un edificio el cual necesariamente habrá de impedir el libre disfrute del derecho de servidumbre que tiene el predio de la demandante, siendo su predio dominante y el predio del demandado el predio sirviente."

.En la segunda causa de acción de dicha demanda la demandante expuso que el demandado había roto la cañería antes mencionada; que esto le causó inconvenientes con los inquilinos y los vecinos de la propiedad y con el Departamento de Salud; que ha tenido que incurrir en gastos; y que había sido privada por el demandado del uso y disfrute de su derecho; por todo lo cual solicitó sentencia en daños por $5,000.00. También solicitó que el tribunal declarase su derecho al uso y disfrute de la servidumbre a que hemos aludido.

En 18 de junio de 1962 se presentó en el tribunal una Moción de Desistimiento por Estipulación firmada por los abogados de ambas partes y por el demandado personalmente, en la cual se hizo constar lo siguiente:

"La demandante en este caso solicita de este honorable Tribunal que dé por desistida la acción de epígrafe por haber convenido con el demandado en que éste se encargará a su cargo de los gastos en que se incurra en proveerle a la demandante el correspondiente desagüe *directamente al alcantarillado público* por el solar de la demandante, eliminando así la servidumbre que pueda existir sobre su predio, de acuerdo como lo prescribe el Reglamento del Departamento de Salud.

La demandante se encargará del pago de los permisos necesarios para la realización de esta obra y el demandado tendrá a su cargo la realización de la obra." (Énfasis nuestro.)

El Tribunal accedió a lo solicitado y ordenó el sobreseimiento y archivo del caso.

La propiedad de la demandante hace esquina, y por lo tanto colinda por un lado con la calle José de Diego y por otro con la Avenida Barbosa. Ismael Rivera ordenó a su ingeniero que procediese a conectar el desagüe de las aguas negras de la propiedad de la demandante con el alcantarillado de la calle De Diego. Al hacer los trabajos el ingeniero encontró que entre la propiedad de la demandante y el sistema de alcantarillado de dicha calle existía, soterrada a una profundidad de un pie de la superficie, una caja de concreto que mide dos pies de ancho por dos pies de alto y que corre a todo lo largo del lado del solar de la demandante que colinda con la calle De Diego. Dicha caja contiene alambres del teléfono. Al encontrar ese obstáculo el demandado optó por conectar el tubo de desagüe de la propiedad de la demandante al tubo de desagüe que había instalado para servir a su propio edificio sito en el solar contiguo.

Desde que se conectó el tubo de desagüe de la propiedad de la demandante con el de la propiedad de Ismael Rivera, en repetidas ocasiones las aguas negras se han desbordado por los inodoros y demás instalaciones sanitarias de la casa de la demandante y de las de sus inquilinos, causándole esto a la demandante gastos y las preocupaciones y malos ratos que esas situaciones inevitablemente conllevan. Ante esa si-

tuación Dolores Díaz presentó nuevamente en el Tribunal Superior, Sala de San Juan, una demanda solicitando que se ordenase a Ismael Rivera a conectar el desagüe directamente al alcantarillado público, según lo pactado mediante la estipulación en el caso anterior, y solicitando además $5,000.00 por concepto de daños y perjuicios y una suma para honorarios de abogado.

Visto el caso, el tribunal de instancia declaró la demanda sin lugar a pesar de que en sus determinaciones de hecho concluyó como sigue:

"Como consecuencia [de haber el demandado conectado el tubo de desagüe de la propiedad de la demandante al tubo de otro edificio] los tubos de desagüe de ambas propiedades descargan por la misma boca, lo cual, en ocasiones, produce estancamientos y las correspondientes inundaciones de aguas negras en la propiedad de la demandante, ya que la descarga de aguas del edificio del demandado es mayor que la del edificio de la demandante."

Y también concluyó el tribunal de instancia que:

"Como consecuencia directa de la anterior instalación, la demandante sufrió en diez o doce ocasiones distintas en un período de dos años, el problema del estancamiento de aguas negras, ocasionando el desborde de los inodoros de sus tres inquilinos y el de ella, con la correspondiente pestilencia y las molestias e inconveniencias resultantes. Tuvo que contratar plomeros para el descargue de la tubería, con gastos ascendentes a $165.00. Tales descargues constituyen una solución temporera pero no definitiva al problema."

Razonó el tribunal de instancia que el demandado no debe responder por los daños resultantes de un hecho que él no podía prever; que el demandado trató de cumplir lo prometido; y que proveyó un desagüe a la demandante, "aunque imperfecto". Rehusó ordenar al demandado a conectar el desagüe al alcantarillado de la Avenida Barbosa y rehusó conceder daños.

Expedimos el recurso. Señala como errores la recurrente que erró el Tribunal (1) al exonerar de responsabilidad al demandado no obstante haber concluido que éste no cumplió a cabalidad con lo pactado en la estipulación; (2) que erró al no hacer determinación sobre lo relativo a la conexión del desagüe al alcantarillado de la Avenida Barbosa; y (3) que erró al declarar sin lugar la demanda a pesar de que el demandado no cumplió con la estipulación.

Debemos ver si el demandado se obligó y a qué se obligó; si cumplió su obligación o si tuvo excusa válida para no cumplirla; y si al no hacerlo incurrió en responsabilidad civil. En el curso de esta opinión están contestados estos interrogantes.

■ Para poner fin a la acción confesoria de servidumbre y de daños y perjuicios que contra él se tramitaba, el demandado convino en aceptar la estipulación que terminó el pleito original. Dicha estipulación constituye un contrato de transacción que obligó a las partes. Art. 1709 del Código Civil; 31 L.P.R.A. sec. 4821; *Canino* v. *Bellaflores*, 78 D.P.R. 778 (1955). Mediante dicho contrato el demandado Ismael Rivera se obligó a "proveerle a la demandante el correspondiente desagüe directamente al alcantarillado público por el solar de la demandante, eliminando así la servidumbre . . . etc." De los hechos anteriormente relatados surge que el demandado no cumplió su obligación pues no proveyó el desagüe directamente al alcantarillado público por el solar de la demandante, ni por ninguno otro, sino que conectó el tubo de desagüe que debió conectar al alcantarillado con el tubo de desagüe de otro edificio.

■ Cabe preguntar si tiene consecuencia para la solución de este caso el hecho de que el desagüe que debió conectarse al alcantarillado público se conectara con el tubo de otro edificio. De los hechos antes relatados surge que ese hecho es en efecto significativo a los fines de determinar si el deman-

dado cumplió o no su obligación. La importancia de ese hecho estriba en que esa conexión con el otro tubo—no autorizada ni prevista en la estipulación—resultó ineficaz e insuficiente. En otras palabras, el propósito o causa del contrato de transacción desde el punto de vista de la demandante, que era tener un desagüe de aguas negras que funcionase bien y normalmente, no se logró. No solamente no cumplió el demandado su obligación desde el punto de vista estricto— pues no proveyó el desagüe *directamente* al alcantarillado por el solar de la demandante—sino que tampoco lo cumplió sustancialmente pues el desagüe que proveyó no opera satisfactoriamente.

Probablemente el tubo del desagüe del edificio del demandado, al cual éste conectó el otro que debió ir al alcantarillado, no estaba diseñado o calculado para recibir descargas adicionales, pero por la razón que fuese lo determinante es que dicha conexión no funcionó bien, quedando incumplida la obligación del demandado.

Contestados ya los primeros tres interrogantes que anteriormente señalamos corresponde ahora que determinemos si el demandado tuvo excusa válida para no cumplir su obligación. Como se sabe, la ley dispone que quedará liberado el deudor en las obligaciones de hacer cuando la prestación resultare físicamente imposible. Art. 1138 del Código Civil; 31 L.P.R.A. sec. 3193.

El demandado no puede prevalerse de la anteriormente citada disposición. Los recursos de la ingeniería moderna no son tan pobres como para que sea *imposible* vencer el obstáculo que en el paso de una tubería representa una caja de cemento de dos pies de alto por dos pies de ancho, pero asumiendo que lo fuese, el demandado, para cumplir sustancialmente su obligación—que era proveer un desagüe de aguas negras *directamente* al alcantarillado público—pudo haber conectado dicho desagüe con el alcantarillado de la Avenida Barbosa, la otra calle con la cual colinda el solar

de la demandante. Un desagüe así conectado, que hubiese funcionado bien, posiblemente constituiría—de no lesionar otros derechos de aquélla—el cumplimiento de la obligación contraída por el demandado, pues no parece que era elemento importante de la estipulación a cual de las dos calles se conectaría el desagüe. Probablemente por eso ese detalle no se especificó en la estipulación. Sin embargo, sí se especificó que la conexión se haría directamente al alcantarillado público. Es fácil entender que este último era un elemento importante de la estipulación pues es contrario a la ley y al orden público no conectar las descargas de aguas negras al alcantarillado público en las calles en donde existe dicho alcantarillado, excepto en circunstancias especiales previstas por la ley. 22 L.P.R.A. sec. 159; 24 R.&R.P.R. sec. 350–1755.[1]

Debemos resolver ahora si el demandado incurrió o no en responsabilidad civil al no cumplir la obligación que contrajo al pactar lo estipulado.

Como vimos, de la anterior relación de hechos surge que el incumplimiento del demandado produjo daños a la demandante. El repetido desbordamiento de esas aguas negras en su casa y en las de sus inquilinos le causó considerables molestias y mortificaciones y también gastos. Además, la acción del demandado al destruir el desagüe que originalmente tenía la propiedad de la demandante obligó a ésta a litigar dos veces y, como se sabe, los pleitos ocasionan gastos y sinsabores a los litigantes.

El demandado invoca el Art. 1058 del Código Civil, 31 L.P.R.A. sec. 3022, que dispone que nadie responderá de aquellos sucesos "que no hubieran podido preverse, o que

---

[1] En vista de esto, de ser totalmente imposible conectar el desagüe de la propiedad de la demandante al alcantarillado público por cualquiera de las dos calles con las cuales el solar colinda, entonces con toda probabilidad habría que revertirse a la situación *ante litem,* esto es, a la de la servidumbre, pues mediante ésta el solar de la demandante *tenía* acceso al alcantarillado público.

previstos, fueran inevitables." No estamos de acuerdo con su posición. Los hechos de este caso demuestran que se trataba de una obra sumamente sencilla y debemos concluir que el demandado—actuando a través de su propio ingeniero —debió prever que el tubo de desagüe de su edificio no estaba diseñado para recibir descargas adicionales de otros edificios. Rige esta situación de hechos el Art. 1060 del Código Civil, 31 L.P.R.A. sec. 3024, el cual dispone que el deudor responde de los daños y perjuicios "previstos o que se hayan podido prever" y que sean consecuencia necesaria "de su falta de cumplimiento". La falta de cumplimiento del demandado unida a su acción poco prudente de efectuar la equivocada conexión de los tubos produjo como consecuencia directa los daños que sufrió la demandante. Ya hemos dicho que los mismos se pudieron haber previsto de haberse utilizado el cuidado y diligencia que la obra requería.(²)

En su demanda la demandante solicita que se le ordene al demandado construir el desagüe directo hacia el alcantarillado público; $5,000.00 por concepto de daños y perjuicios; las costas y honorarios de abogado. En las obligaciones de hacer, como la del caso que nos ocupa, es de aplicación el Art. 1051 del Código Civil, 31 L.P.R.A. sec. 3015, el cual dispone lo siguiente:

"Si el obligado a hacer alguna cosa no la hiciere, se mandará ejecutar a su costa.

Esto mismo se observará si la hiciere contraviniendo al tenor de la obligación. Además podrá decretarse que se deshaga lo mal hecho."

Sobre lo anterior véase Castán, obra y tomo citados, pág. 186; Puig Brutau, obra y tomo citados, pág. 453.

---

(²) Véase *Cabinero* v. *Cobián Theatres*, 81 D.P.R. 960, 976 (1960); Castán, *Derecho Civil Español, Común y Foral*, Tomo 3, 10ma. ed. (1967), pág. 175; Puig Brutau, *Fundamentos de Derecho Civil*, Tomo I, Vol. 2 (1959), pág. 440.

También es cierto que cuando, con motivo del incumplimiento de obligaciones contractuales, se causan daños y se justifica su realidad y su relación directa con el incumplimiento se puede recobrar indemnización. En uno de los preceptos relativos a las consecuencias del incumplimiento de las obligaciones el Código Civil dispone, en su Art. 1077, 31 L.P.R.A. sec. 3052, que "El perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, *con el resarcimiento de daños y abono de intereses en ambos casos.*" (Énfasis nuestro.) *Pérez* v. *Sampedro,* 86 D.P.R. 526, 530 (1962); *Rutledge* v. *Gill,* 78 D.P.R. 698, 713 (1955); *Camacho* v. *Iglesia Católica,* 72 D.P.R. 353, 363 (1951) y autoridades allí citadas; Puig Brutau, *Fundamentos de Derecho Civil* (1959), Tomo 1, Vol. 2, págs. 157–158 y 447–466; Manresa, *Código Civil Español* (1950), Tomo 8, Vol. 1, pág. 120; Scaevola, *Código Civil* (1957), Tomo 19, pág. 607. En *Camacho* v. *Iglesia Católica,* supra, dijimos:

"En este caso hubo, como ya hemos dicho, un incumplimiento del contrato por parte de la demandada . . . En un contrato . . . como el aquí envuelto, los daños que por concepto de sufrimientos y angustias mentales reclaman los demandantes pudieron ser previstos por la demandada y son claramente consecuencia necesaria de la falta de cumplimiento del contrato." (Citas omitida.)

Es fácil ver la justicia de lo dispuesto en el antes citado Art. 1077. Si se recobran daños por la obligación general implícita, reconocida en el Art. 1802, que tiene toda persona de actuar con la debida prudencia para no lesionar la persona y los derechos de los demás, hay igual o mayor razón para recobrar los daños realmente causados cuando se incumple injustificadamente una obligación específica asumida expresa y conscientemente. Así por ejemplo, el propio Código Civil en su Art. 1054 expresamente dispone que quedan sujetos a indemnización los daños y perjuicios causados por los que

en el cumplimiento de sus obligaciones incurren en negligencia. 31 L.P.R.A. sec. 3018.(³)

*Por las razones expuestas en esta opinión se revocará la sentencia del Tribunal Superior, Sala de San Juan, dictada en este caso en 28 de octubre de 1966 y se dictará otra en su lugar declarando con lugar la demanda; ordenando al demandado a conectar el desagüe de las aguas negras de la propiedad de la demandante directamente al alcantarillado público o en su defecto autorizando a la demandante a ejecutar dicha obra a costa del demandado; y condenando al demandado a pagar a la demandante la suma de $3,000.00 por concepto de daños y perjuicios.*

---

(³) Para una discusión de la obligación implícita de actuar con la debida prudencia para no causar lesión a los demás véase Pound, *Jurisprudence*, Vol. V, págs. 283–346, y del mismo autor el capítulo 4 de su *Introduction to the Philosophy of Law*, ed. revisada de 1954, cita precisa a la pág. 86.