# 2003 DTA 82

## TRIBUNAL DEL CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL I, PANEL IV DE SAN JUAN

TEATROS SOLA, INC.
Demandante-Apelado

v.

FELIPE LOPEZ GUZMAN, ETC.
Demandados-Apelantes

Núm. KLAN-01-00440

San Juan, Puerto Rico, a 30 de abril de 2003

Panel integrado por su Presidente, el Juez Gierbolini,
el Juez Cordero y el Juez Rodríguez Muñiz

Gilberto Gierbolini, Juez Ponente

 

## TEXTO COMPLETO DE LA SENTENCIA

El 4 de mayo de 2001, Felipe López Guzmán h/n/c Logman, Ing. presentó Recurso de Apelación en el que nos solicitó la revocación de la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 16 de marzo de 2001 y notificada el 6 de abril de 2001. Mediante dicha sentencia, el tribunal *a quo* condenó a López al pago de $24,618.75.

Por los fundamentos que expondremos a continuación, **MODIFICAMOS** la sentencia apelada, y así modificada, **CONFIRMAMOS** la misma.

### I

El 20 de septiembre de 1996, Teatros Solá, Inc. y Felipe López Guzmán h/n/c Logman, Ing. (en adelante Ingeniero López), suscribieron una carta acuerdo con fecha del 2 de septiembre de 1996, en virtud de la cual, Teatros Solá contrató los servicios del Ingeniero López para la preparación de unos planos y un estimado de costos para llevar a cabo la remodelación del Teatro Roosevelt a un costo de $10,000.00, de los cuales Teatros Solá pagó al Ingeniero López $6,500.00 por adelantado. Las partes también acordaron que el Ingeniero López sería el responsable de los trabajos de remodelación, los cuales tardarían aproximadamente seis meses, mientras que la preparación de los planos tardaría unos tres meses. El Ingeniero López se comprometió a hacer su mayor esfuerzo por iniciar los trabajos de remodelación entre el 23 de diciembre de 1996 y el 4 de enero de 1997.

En una reunión celebrada por las partes el 27 de noviembre de 1997, el Ingeniero López entregó tres hojas de planos preliminares y muestras de losas. Luego de varias misivas cursadas entre las partes, el 17 de diciembre de 1996, el Ingeniero López envió una carta a Teatros Solá en la que informó que daba por terminada su intervención en la remodelación del teatro por entender que era lo más prudente. En contestación a dicha carta, el 18 de diciembre de 1996, Teatros Solá dirigió una carta al Ingeniero López en la que requirió la devolución de los $6,500.00 pagados por adelantado. El 23 de diciembre de 1996, el Ingeniero López envió a Teatros Solá una factura por servicios prestados de $12,591.72 con un balance sin pagar de $6,091.72.

El 14 de enero de 1997, Teatros Solá presentó Demanda en cobro de dinero, incumplimiento de contrato y daños y perjuicios contra Felipe López Guzmán h/n/c Logman, Ing., Fulana de Tal y la Sociedad Legal de Gananciales compuesta por ambos. La parte demandante alegó que el Ingeniero López incumplió con los términos del contrato al no prestar los servicios para los cuales fue contratado, el demandando no quiso devolver la llave de la puerta de entrada del teatro y tuvieron que cambiar la cerradura de la puerta, gestionaron un préstamo de $125,000.00 para financiar la remodelación del teatro y habían informado al público que el cine estaría cerrado por remodelación durante la época navideña. Teatros Solá solicitó la resolución del contrato, la devolución de los $6,500.00 pagados al Ingeniero López y reclamó $100,000.00 en concepto de daños más el pago de costas, intereses y honorarios de abogado. El 24 de marzo de 1997, el Ingeniero López contestó la demanda y alegó que él no fue contratado para remodelar el teatro, los servicios profesionales contratados

estaban limitados a la preparación de los planos y de un estimado de los costos de la remodelación, el costo total por dichos servicios fue pactado en $10,000.00 y la parte demandante fue quien ordenó no continuar con la coordinación de los trabajos. Además, presentó reconvención en la que reclamó el pago de $6,091.72 por servicios prestados y $500,000.00 por daños a su reputación profesional y angustias emocionales, más costas y $5,000.00 de honorarios de abogado.

Debido a que las partes no pudieron llegar a un acuerdo, el 16 de noviembre de 1998, el Tribunal de Primera Instancia nombró como perito al Ing. José Miguel Ventura, cuyos honorarios serían sufragados por ambas partes, para resolver la controversia de los honorarios del Ingeniero López. El Ingeniero Ventura tenía el deber de evaluar la prueba documental ofrecida por las partes y determinar si el Ingeniero López debía devolver el dinero pagado. El 23 de marzo de 1999, el Ingeniero Ventura presentó su informe pericial en el que recomendó compensar al Ingeniero López sólo $4,000.00 por los trabajos realizados. Por lo que éste debería devolver $2,500.00, sin derecho a recibir ningún honorario adicional. Luego de una reunión con el perito, las partes aceptaron el informe y el tribunal acogió la recomendación del Ingeniero Ventura y programó vista para el 17 de junio de 1999 a los únicos efectos de aquilatar daños.

El 16 de marzo de 2001, el Tribunal de Primera Instancia emitió sentencia, notificada el 6 de abril de 2001, en la que declaró con lugar la demanda, desestimó la reconvención presentada por el demandado y condenó al Ingeniero López al pago de $15,533.75 por concepto de los honorarios del Arquitecto Joglar, de $85.00 por el cambio de cerradura, de $5,000.00 por concepto de daños y perjuicios, de $2,500.00 por los honorarios que cobró por adelantado y de $1,500.00 de honorarios de abogado. Además, del pago de costas e intereses acumulados a razón·del 9½% computados desde la fecha de presentación de la demanda.

Inconforme con dicha determinación, el 4 de mayo de 2001, el Ingeniero López acudió ante nos mediante recurso de apelación en el que nos solicitó la revocación de la sentencia emitida por el Tribunal de Primera Instancia a quien imputa la comisión de los siguientes cuatro errores:

*"Erró el tribunal apelado al determinar que el apelante no prestó los servicios profesionales para los cuales fue contratado y no entregó los planos finales, sin tomar en consideración la prueba sobre novación de contrato presentada por éste.*

*Erró el tribunal apelado al determinar que la parte demandante sufrió malestar a causa de las preguntas de algunos clientes acerca de la remodelación y que su credibilidad fue objeto de escrutinio al no solicitar el desembolso del dinero aprobado para el financiamiento de la remodelación del teatro, en ausencia de prueba suficiente al respecto.*

*Erró el tribunal apelado al determinar que las actuaciones del apelante pusieron en riesgo la propiedad y la seguridad personal de los empleados y representantes de Teatros Solá, Inc., en ausencia de prueba suficiente al respecto.*

*Erró el tribunal apelado al determinar que la parte demandante tuvo que contratar los servicios de un perito profesional para evaluar la responsabilidad del apelante, omitiendo así el propósito para lo cual el tribunal nombró un perito judicial."*

## II

Debido a que la mayoría de los señalamientos de error están dirigidos a cuestionar la apreciación de la prueba realizada por el tribunal *a quo*, resulta forzoso esbozar primero cuáles son los criterios de revisión judicial aplicables. En nuestro sistema de derecho, es norma reiteradamente establecida que la apreciación de la prueba realizada por el Tribunal de Primera Instancia merece nuestra deferencia y en ausencia de pasión, prejuicio, parcialidad, error manifiesto, o que la apreciación de la evidencia sea contraria a la realidad factual, o

que la prueba resulte ser inherentemente imposible o increíble, debemos abstenernos de intervenir con el criterio y la apreciación del tribunal apelado, *Monllor v. Soc. de Gananciales*, 138 D.P.R. 600, 610 (1995); *Pueblo v. Maisonave Rodríguez*, 129 D.P.R. 49, 62-63 (1991); *Pueblo v. Rivero, Lugo y Almodóvar*, 121 D.P.R. 454, 472-473 (1988).

El Tribunal Supremo ha reconocido que los tribunales de instancia están en mejor posición que los tribunales apelativos para evaluar la prueba presentada y conceder daños, toda vez que han tenido contacto directo con la prueba y han podido evaluar sus elementos visibles e intangibles. Después de todo, son los que tienen la oportunidad de ver y escuchar las declaraciones de los testigos y de examinar su comportamiento en la silla testifical, mientras que nosotros sólo tenemos récords mudos e inexpresivos, *Pueblo v. Maisonave Rodríguez, supra*, a las páginas 62-63; *Pueblo v. Rivero, Lugo y Almodóvar, supra*, a las páginas 472-473; *Pérez Cruz v. Hosp. La Concepción*, 115 D.P.R. 721, 728 (1984).

No obstante, el arbitrio del juzgador de hechos no es absoluto. *"Una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal," Ramos Acosta v. Caparra Dairy, Inc.,* 113 D.P.R. 357, 365 (1982) citando a *Vda. de Morales v. De Jesús Toro,* 107 D.P.R. 826, 829 (1978). En nuestra función revisora debemos *"velar porque se haga justicia a aquella parte que de acuerdo con nuestro más sano criterio, tiene derecho a ella," López Vicil v. ITT Intermedia, Inc.,* 142 D.P.R. 857, 867 (1997). Así, pues, podemos dejar sin efecto las determinaciones de hechos realizadas por el foro de instancia, siempre que del examen de la totalidad de la evidencia quede definitiva y firmemente demostrado que un error fue cometido, *Pueblo v. Hernández Castro*, 90 D.P.R. 329, 336 (1964).

En el caso de autos, el Tribunal de Primera Instancia aquilató la prueba documental y testifical presentada y confirió la credibilidad y la confiabilidad que le mereció. No surge del récord ningún indicio de que el tribunal haya actuado de forma parcializada o prejuiciada.

En el primer señalamiento de error, el apelante indica que el Tribunal de Primera Instancia no consideró la prueba de novación sometida por él. No le asiste la razón. De la prueba presentada, surge lo siguiente: (1) el Ingeniero López entregó tres hojas de unos planos preliminares y realizó algunas gestiones relacionadas con la remodelación del teatro, pero no entregó los planos finales; (2) el Ingeniero López no entregó el estimado de los costos de la remodelación; (3) Teatros Solá había divulgado al público asistente al teatro que el mismo iba a ser remodelado y modernizado en una fecha determinada que comenzaría alrededor de diciembre de 1996 y no pudo ser; (4) Teatros Solá realizó las gestiones requeridas y necesarias para que el Banco Popular aprobara el financiamiento del costo de la remodelación del teatro y éste aprobó un préstamo comercial con garantía hipotecaria de $165,000.00; (5) Teatros Solá contrató los servicios del Arquitecto José Carlos Joglar para realizar los mismos servicios profesionales para los cuales había sido contratado el Ingeniero López; (6) el Banco Popular hizo un adelanto parcial de $15,000.00 para pagar los servicios del Arquitecto Joglar; (7) Teatros Solá había pautado la reapertura del teatro para junio de 1997 y tuvieron que retrasarla hasta septiembre de 1998; y (8) el Ingeniero López no entregó la llave del teatro y fue necesario cambiar la cerradura de las puertas. Sin embargo, de la prueba presentada no surgen los elementos necesarios para la aplicación de la figura de la novación.

La novación es un medio de extinguir o modificar una obligación existente. La novación extintiva, tal y como su nombre sugiere, acarrea consigo la extinción de una obligación original o existente y la creación de una nueva, Artículo 1110 del Código Civil, 31 L.P.R.A. Sección 3151. Para que una obligación quede extinguida por efecto de la figura de la novación, el Código Civil exige que los contratantes hayan declarado terminantemente su deseo de extinguir su anterior obligación y sustituirla por una nueva, o que la antigua y la nueva obligación sean de todo punto incompatible, Artículo 1158 del Código Civil, 31 L.P.R.A. Sección 3242. Mientras, la novación modificativa no extingue la obligación principal, sino que la modifica, *Teachers' Annuity v. Soc. de Gananciales,* 115 D.P.R. 277, 285-286 (1984). La obligación original puede ser modificada, ya sea

por variación en el objeto o en las condiciones principales, por sustitución del deudor, o por subrogación de un tercero en los derechos del acreedor, Artículo 1157 del Código Civil, 31 L.P.R.A. Sección 3241.

Independientemente del tipo de novación que opere en una situación dada, la misma nunca puede ser presumida, sino que ha de ser acreditada sin ningún tipo de duda. La novación es siempre un asunto de intención, la cual debe ser inferida de las circunstancias que rodean cada caso en particular. El elemento de la voluntad de las partes resulta ser lo determinante para que surja la novación, *Constructora Bauzá, Inc. v. García López*, 129 D.P.R. 579, 598 (1991). En el caso de autos, no existe prueba de que hubiere una voluntad manifiesta de las partes para modificar o extinguir la obligación original. Resulta claro que no hubo novación de la obligación que tenía el apelante para con el apelado. La reunión que celebraron las partes fue más bien para aclarar la situación en cuanto a las gestiones a realizar para efectivamente cumplir con lo pactado en el contrato original, crear las condiciones necesarias para comenzar la remodelación del teatro en una fecha determinada, lo cual fue estipulado en el acuerdo original. Por lo que el primer error señalado, no fue cometido.

### III

En cuanto a la estimación y valoración de daños, los foros apelativos también debemos abstenernos de intervenir respecto a las cantidades concedidas por el foro de instancia, a menos que éstas sean ridículamente bajas o exageradamente altas. Los tribunales tienen la difícil y angustiosa tarea de estimar y valorar las partidas de daños correspondientes, la cual descansa en el ejercicio discrecional, prudente y razonable del juzgador de hechos animado por un sentido de justicia y de conciencia humana. Nuestro deber es procurar que el perjudicado sea resarcido de forma justa y razonable, sin que al indemnizar al demandante, el demandado resulte castigado indirectamente, *S.L.G. v. Nationwide Ins. Co.*, 156 D.P.R. ____ (18 abril 2002); **2002 J.T.S. 61**, a la página 1010; *Cotto Morales v. Ríos*, 140 D.P.R. 604, 626 (1996). El derecho a ser compensado no puede tener carácter punitivo, sino compensatorio o reparador.

En materia de responsabilidad por incumplimiento de contrato es menester referirnos al Artículo 1054 del Código Civil, 32 L.P.R.A. Sección 3018, el cual establece que aquéllos que en el cumplimiento de sus obligaciones contractuales incurrieren en dolo, negligencia, morosidad o de alguna manera contravengan las mismas, tienen la responsabilidad de indemnizar los daños y perjuicios causados a la otra parte contratante. De tal modo, que todo incumplimiento contractual que ocasione daños da lugar a una causa de acción para su resarcimiento, *Constructora Bauzá, Inc. v. García López, supra*, a la página 593. El Artículo 1059 del Código Civil, 32 L.P.R.A. Sección 3023, explica que *"la indemnización de daños y perjuicios comprende no sólo el valor de la pérdida que haya sufrido, sino también el de la ganancia que haya dejado de obtener el acreedor."* De igual modo, los daños por angustias mentales son compensables en acciones basadas en incumplimiento de contrato cuando tales daños pudieron haber sido previstos al tiempo de constituir la obligación, y sean a consecuencia de la falta de cumplimiento, *Soc. de Gananciales v. Vélez & Asoc.*, 145 D.P.R. 508, 523 (1998); *Camacho Vda. de Alustiza v. Iglesia Católica*, 72 D.P.R. 353, 363 (1951).

Como regla general, la responsabilidad civil en daños y perjuicios implica un deber de resarcir al damnificado, otorgándole un valor económico o *quántum* reparador al daño sufrido mediante la concesión de una compensación. Esto es una especie de subrogación real donde la compensación económica crea una situación patrimonial equivalente a la destruida por el daño causado, *García Pagán v. Shiley Caribbean, Etc.*, 122 D.P.R. 193, 205-206. No obstante, no pueden ser concedidos daños especulativos, pues la indemnización no es una industria en busca de ganancias. Por tal razón, el promovente de la causa de acción tiene la obligación de probar que sufrió daños con razonable certeza y precisión, a los fines de poner al juzgador en posición de determinar los mismos sin necesidad de incurrir en especulaciones, *S.L.G. v. F.W. Woolworth & Co.*, 143 D.P.R. 76, 81 (1997); *Masa v. A.F.F.*, 96 D.P.R. 856, 873 (1969).

La prueba presentada en el caso ante nos, no sostiene la determinación del Tribunal de Primera Instancia de conceder a Teatros Solá $5,000.00 por daños y perjuicios. Teatros Solá no demostró los daños alegadamente

sufridos de forma concreta y tampoco aseguró haber tomado alguna medida para evitar la posibilidad de algún daño. Véase, *Fresh-O-Baking v. Molinos de P.R.*, 103 D.P.R. 509, 520 (1975). Por lo que entendemos que los señalamientos de error dos y tres fueron cometidos.

## IV

Por último, el apelante señala que el Tribunal de Primera Instancia erró al determinar que Teatros Solá tuvo que contratar a un perito profesional, ya que el tribunal nombró un perito judicial. No le asiste la razón. Teatros Solá contrató al Arquitecto Joglar para preparar los planos y el estimado de los costos de la remodelación del teatro, el mismo trabajo para el cual el Ingeniero López fue contratado y no realizó. Mientras que el perito nombrado por el tribunal tenía el deber de analizar si los honorarios cobrados por el Ingeniero López eran razonables de acuerdo al trabajo realizado. El Tribunal de Primera Instancia nombró a un perito judicial para dilucidar la controversia surgida entre las partes debido al incumplimiento del apelante y Teatros Solá contrató al Arquitecto Joglar para poder llevar a cabo la remodelación del teatro. Dos asuntos totalmente separados e independientes. Por lo que sostenemos la determinación del Tribunal de Primera Instancia a los efectos de que el Ingeniero López tiene que reembolsar a Teatros Solá el pago de los honorarios del Arquitecto Joglar.

## V

Por los fundamentos anteriormente expuestos, **MODIFICAMOS** la Sentencia apelada a los fines de revocar la imposición del pago de $5,000.00 por concepto de daños y perjuicios, y así modificada, **CONFIRMAMOS** la Sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General