EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Juan Luis Freire Ayala et al<br><br>Demandantes Recurridos<br><br>v.<br><br>Vista Rent To Own, Inc. et al<br><br>Demandados Peticionarios | Certiorari<br><br>2006 TSPR 162<br><br>169 DPR _____ |

Número del Caso: CC-2004-595

Fecha: 9 de noviembre de 2006

Tribunal de Apelaciones:

> Región Judicial de San Juan-Panel I

Juez Ponente:
> Hon. Dora T. Peñagarícano Soler

Abogados de la Parte Demandada Peticionaria:

> Lcdo. Reynaldo A. Quintana Latorre
> Lcdo. Ángel Omy Rey-Seijo

Abogado de la Parte Demandante Recurrida:

> Lcdo. Juan P. Rivera Román

Materia: Discrimen

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan Luis Freire Ayala *et al*

    Demandantes Recurridos

            v.

Vista Rent To Own, Inc. *et al*

    Demandados Peticionarios

CC-2004-595

Opinión del Tribunal emitida por el Juez Asociado señor Rivera Pérez.

San Juan, Puerto Rico, a 9 de noviembre de 2006.

Tenemos ocasión de resolver si es eficaz en derecho, bajo el principio constitucional de sistema judicial unificado, la presentación inicial de un recurso de *certiorari* en la Secretaría de una sede del Tribunal de Primera Instancia que no es la sede recurrida de dicho tribunal. También, si tiene validez una cláusula contractual mediante la cual un empleado exento acuerda con su patrono limitar su jornada de trabajo. ¿Tiene disponible ese empleado una causa de acción en daños y perjuicios por habérsele requerido trabajar en exceso de la jornada de trabajo limitada por su contrato de empleo? Veamos los hechos que originan el presente recurso.

I

El señor Juan Luis Freire Ayala, en adelante señor Freire Ayala, comenzó a trabajar en octubre de 1999 para Vista Rent to Own, Inc., h/n/c Rent a Center, en adelante Rent a Center, como "Junior Assistant Manager", devengando un salario de $19,500 anuales, equivalentes a $375 semanales. En ese entonces, el señor Freire Ayala contaba con cuarenta y tres (43) años de edad.

El señor Freire Ayala comenzó en el empleo laborando en el Departamento de Ventas de la sucursal de Rent a Center en Carolina. Posteriormente, fue trasladado al mismo departamento en la sucursal de la empresa en Río Piedras. Finalmente, fue trasladado a la sucursal de la compañía en Carolina, ésta vez al Departamento de Crédito. El señor Freire Ayala fungió como supervisor de dos (2) de las cinco (5) rutas en que estaba dividido el Departamento de Crédito. Tenía a su cargo la supervisión de un (1) empleado por ruta. Eventualmente, fue designado supervisor de las cinco (5) rutas antes mencionadas. Previo a su despido, el señor Freire Ayala fue amonestado por su patrono como consecuencia de la alegada reducción en ventas que experimentaron dos (2) de las cinco (5) rutas supervisadas por él. En septiembre de 2001, Rent a Center prescindió de sus servicios aduciendo la misma razón.

El 17 de enero de 2003, el señor Freire Ayala presentó ante la **Sala Superior de la Sede de San Juan** del Tribunal de

Primera Instancia, una demanda contra de Rent a Center, reclamando discrimen por razón de edad, horas extras y periodos de tomar alimentos trabajados.[1] Alegó que la aducida reducción en ventas fue sólo un pretexto del patrono para encubrir la verdadera razón del despido, su edad. Arguyó, que al ser despedido fue sustituido por un empleado más joven y que la conducta discriminatoria del patrono constituía una violación a la Ley Contra el Discrimen en el Empleo de Puerto Rico.[2] Sostuvo que Rent a Center violó la Ley de Horas y Días de Trabajo de Puerto Rico[3], al no compensarle las horas extras que trabajó, en exceso de cuarenta (40) a la semana, ni los periodos de tomar alimentos trabajados durante su tiempo de servicio con la empresa. Reclamó compensación salarial y daños ascendentes a $353,000.

Oportunamente, Rent a Center contestó la demanda. Alegó que la causa de acción de discrimen en el empleo por razón de edad estaba prescrita. Además, arguyó que el despido del señor Freire Ayala estuvo justificado en un pobre y negligente desempeño causante de la reducción en ventas y pérdidas económicas que experimentó en la tienda bajo su supervisón. Sostuvo que en el despido del señor Freire Ayala no medió intención ni ánimo discriminatorio, y que, en la

---

[1] Apéndice del recurso de *Certiorari*, págs. 109-112.

[2] Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. secs. 146 *et seq*.

[3] Ley Núm. 379 de 15 de mayo de 1948, según enmendada, 29 L.P.R.A. secs. 271 *et seq*.

alternativa, de entenderse que el despido fue injustificado, el único remedio disponible al señor Freire Ayala era la mesada dispuesta en la Ley de Indemnización por Despido Injustificado.[4] Finalmente, alegó que el señor Freire Ayala no tenía derecho a reclamar compensación por horas extras ni por periodos de tomar alimentos trabajados, por ser un empleado exento bajo la legislación y reglamentación de horas y salarios vigente en nuestra jurisdicción.

Así las cosas, el 12 de septiembre de 2003, Rent a Center presentó una moción solicitando que se dictara sentencia sumaria.[5] Sostuvo que de las declaraciones del señor Freire Ayala en la deposición que le fuera tomada durante el proceso de descubrimiento de prueba, en unión a las alegaciones de la demanda, se desprendía que éste se desempeñó como empleado gerencial exento durante su tiempo de servicio con la compañía. Por otro lado, arguyó que la acción de discrimen en el empleo por razón de edad estaba prescrita, toda vez que fue entablada transcurrido más de un (1) año del despido del demandante. Solicitó del foro primario que desestimara sumariamente las reclamaciones de horas extras, periodos de tomar alimentos y discrimen en el empleo.

El señor Freire Ayala se opuso a la solicitud de sentencia sumaria presentada por Rent a Center.[6] Sostuvo que

---

[4] Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. secs. 185 *et seq*.

[5] Apéndice del recurso de *Certiorari*, págs. 131-289.

[6] Íd., págs. 294-301.

era improcedente el planteamiento de prescripción de la causa de acción de discrimen en el empleo, en vista de que el 10 de septiembre de 2002, dentro del término prescriptivo de dicha causa de acción, había cursado a Rent a Center una carta constitutiva de una reclamación extrajudicial.[7] Arguyó que su misiva cumplía con los requisitos establecidos por la jurisprudencia de este Tribunal para interrumpir la prescripción. En torno a las reclamaciones de horas extras y periodos de tomar alimentos trabajados, aceptó que no había controversia alguna sobre el hecho de que sus funciones como "Junior Assistant Manager" eran de índole gerencial.[8] No obstante, alegó que de conformidad con el contrato de trabajo habido entre las partes, dichas funciones gerenciales estaban circunscritas a una jornada de trabajo de cuarenta y seis (46) horas semanales, por lo que todas las horas que trabajó en exceso de la jornada de trabajo semanal pactada eran extras y compensables.[9] Puntualizó que sus argumentos y los documentos que acompañaron su escrito creaban controversias de hechos materiales y esenciales que impedían la disposición del caso por la vía sumaria.

Luego de varios incidentes procesales, el 20 de enero de 2004, la **Sala Superior de la Sede de San Juan** del Tribunal de

---

[7] Íd., pág. 298.

[8] Íd., pág. 295.

[9] Íd.

Primera Instancia, dictó una resolución sumaria parcial.[10] Mediante la misma, el foro primario desestimó con perjuicio la reclamación de horas extras y periodos de tomar alimentos trabajados, y declaró "no ha lugar" el planteamiento de prescripción de la causa de acción de discrimen en el empleo. Determinó que durante el tiempo de servicio del señor Freire Ayala en Rent a Center, éste fue un "ejecutivo" exento, según dicho término ha sido definido por el Reglamento Núm. 13 de la extinta Junta de Salario Mínimo de Puerto Rico.[11] Resolvió que al ser un "ejecutivo" exento, le eran inaplicables las disposiciones de la Ley Núm. 379, *supra*, y, por consiguiente, no tenía derecho a paga por horas extras ni derecho al disfrute del período de tomar alimentos. Concluyó que el hecho de que el patrono y el señor Freire Ayala suscribieran un contrato fijando las horas de trabajo semanales y el salario a ser devengado bajo dicha jornada de trabajo, no derrotaba el hecho de que éste era un empleado exento carente de derecho a recibir paga por horas extras trabajadas. Copia de dicha resolución fue notificada y archivada en autos el 26 de enero de 2004.[12]

Inconforme, el 25 de febrero de 2004, día número treinta

---

[10] Apéndice del recurso de *Certiorari*, págs. 48-63. Fue titulada erróneamente "Sentencia Sumaria Parcial". Al no cumplir con las exigencias de la Regla 43.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, constituye, más bien, una resolución.

[11] *Infra*.

[12] Apéndice del recurso de *Certiorari*, pág. 97.

(30) a partir del archivo en autos de copia de la referida resolución, el señor Freire Ayala presentó un recurso de *certiorari* en la Secretaría de la **sede de Ponce del Tribunal de Primera Instancia**, ciudad en la que ubica la oficina de su representante legal.[13] Al día siguiente, 26 de febrero de 2004, el señor Freire Ayala notificó el original del escrito y las copias reglamentarias del mismo a la Secretaría del Tribunal de Apelaciones. Es decir, notificó al Tribunal de Apelaciones el original del recurso y sus copias reglamentarias el día treinta y uno (31) a partir del archivo en autos de copia de la resolución del foro primario.[14]

En su recurso de *certiorari*, el señor Freire Ayala alegó que el Tribunal de Primera Instancia erró al desestimar sumariamente la reclamación de salarios. Sostuvo que aunque había admitido en una deposición sus "funciones gerenciales", su reclamación salarial trascendía la aplicabilidad del Reglamento Núm. 13, *supra*, porque la misma tenía que evaluarse a la luz de las disposiciones generales de los contratos que establece el Código Civil. Así, afirmó que no estaba en controversia ni la posición ni las funciones del cargo que ocupó en Rent a Center, sino el derecho que tenía a recibir paga por las horas que trabajó en exceso de la

---

[13] Véase Oposición a Petición de *Certiorari*, pág. 6. Véase, además, "Oposición Alegato" de la parte demandante recurrida, pág. 7. Véase, también, notificación de la Secretaria General del Tribunal de Primera Instancia, Sala de Ponce de 25 de febrero de 2004; Autos del Tribunal de Apelaciones, caso KLCE-2004-00212.

[14] Apéndice del recurso de *Certiorari*, págs., 88-96.

jornada máxima semanal de cuarenta y seis (46) horas que pactó con el patrono. Arguyó que tenía un derecho constitucional, legal y contractual a compensación por dichas horas.

Por su parte, Rent a Center presentó ante el Tribunal de Apelaciones una moción de desestimación alegando que dicho tribunal carecía de jurisdicción para acoger el recurso de *certiorari*. Sostuvo que el señor Freire Ayala presentó el recurso vencido el término de cumplimiento estricto de treinta (30) días dispuesto por nuestro ordenamiento procesal civil para solicitar la revisión de resoluciones del Tribunal de Primera Instancia. Arguyó que la presentación un (1) día tardía e inexcusada con circunstancias especiales en la propia petición de *certiorari*, privaba de jurisdicción al Tribunal de Apelaciones. Rent a Center pasó por alto en su moción la presentación inicial del recurso que el señor Freire Ayala hizo en la Secretaría de la sede de Ponce del Tribunal de Primera Instancia.

El 30 de abril de 2004, el foro intermedio apelativo declaró "no ha lugar" la referida moción de desestimación y revocó el dictamen del Tribunal de Primera Instancia.[15] Resolvió el asunto de su jurisdicción razonando que a pesar de que el recurso de *certiorari* se había presentado el día treinta y uno (31), en interés de la justicia debía atender los méritos del recurso, pues "la radicación de un día en demasía no había ocasionado perjuicio indebido a ninguna de

---

[15] Íd., págs. 23-46.

las partes". Concluyó que la evaluación independiente de los documentos que obraban en su expediente y los escritos de las partes revelaba que el mecanismo de sentencia sumaria no constituía el medio idóneo para resolver la controversia. Determinó que de la deposición tomada al señor Freire Ayala surgía evidencia contradictoria en cuanto a la naturaleza del puesto que éste ocupaba. Puntualizó que el señor Freire Ayala realizaba algunas gestiones propias de un "ejecutivo" exento, pero otras propias de un empleado no exento. Concluyó que no se desprendía de la referida deposición el alcance exacto de la discreción que tenía para tomar decisiones. Por último, determinó que el contrato de trabajo suscrito por las partes especificando puesto, salario y jornada de trabajo era ambiguo, incapaz de revelar la intención de éstas al contratar. Resolvió que al señor Freire Ayala le asistía el derecho a tener su día en corte y presentar evidencia en una vista plenaria, en apoyo de su posición.

Denegada una moción de reconsideración, Rent a Center acudió ante nos, mediante recurso de *certiorari*, señalando los errores siguientes:

**PRIMER ERROR:** Erró el Honorable Tribunal de Apelaciones al expedir el auto de Certiorari y declarar No Ha Lugar la "Moción Solicitando Desestimación del Recurso de Certiorari", presentada por la parte demandada-peticionaria, cuando es evidente que el Honorable Tribunal carecía de jurisdicción para atender el recurso presentado, pues el mismo se presentó fuera del término de cumplimiento estricto dispuesto por ley sin que se hubiese alegado ni demostrado justa causa para ello.

**SEGUNDO ERROR:** Erró el Honorable Tribunal de Apelaciones al revocar la Sentencia Parcial dictada por el Tribunal de Primera Instancia, Sala de San Juan, bajo la consideración de que el mecanismo de Sentencia Sumaria utilizado por el Tribunal de

Primera Instancia no constituía el medio idóneo para resolver la controversia ante sí.

**TERCER ERROR:** Erró el Honorable Tribunal de Apelaciones al revocar la Sentencia Parcial dictada por el Tribunal de Primera Instancia, Sala de San Juan, y concluir que el contrato de empleo suscrito entre las partes era por demás ambiguo y que no se desprendía ni lejanamente la intención de las partes al suscribir el contrato.

Contando con el beneficio de la comparecencia de ambas partes nos encontramos en posición de resolver.

II

En primer lugar, nos corresponde resolver si actuó correctamente el Tribunal de Apelaciones al asumir jurisdicción sobre el recurso de *certiorari* presentado por el señor Freire Ayala. Para ello, debemos primero contestar la interrogante siguiente: ¿Tiene eficacia jurídica la presentación de un recurso de *certiorari* el último día hábil del término para hacerlo en una Secretaría de una sede del Tribunal de Primera Instancia distinta a la expresamente facultada a recibirlo a tenor con lo dispuesto por las Reglas de Procedimiento Civil y el Reglamento del Tribunal de Apelaciones? Sí la tiene. Veamos.

**A. Principio constitucional de jurisdicción judicial unificada.**

Reiteradamente hemos resuelto que los tribunales deben ser celosos guardianes de su jurisdicción. Las cuestiones de jurisdicción, por ser privilegiadas, deben ser resueltas con

preferencia.  De carecer de jurisdicción, lo único que puede hacer un tribunal es así declararlo y desestimar el caso.[16]

Por otro lado, el Artículo V, Sección 2 de la Constitución de Puerto Rico dispone lo siguiente:

> **Los tribunales de Puerto Rico constituirán un sistema judicial unificado en lo concerniente a jurisdicción, funcionamiento y administración.** La Asamblea Legislativa, en cuanto no resulte incompatible con esta Constitución, podrá crear y suprimir tribunales, con excepción del Tribunal Supremo, y determinará su competencia y organización (énfasis nuestro).[17]

En torno a dicha sección, el informe de la Comisión de la Rama Judicial de la Convención Constituyente expresó lo siguiente:

> **Esta sección establece la completa unificación de los tribunales de Puerto Rico.  La unificación de los tribunales produce, entre otros efectos, la eliminación de problemas técnicos de jurisdicción.** El poder legislativo queda, no obstante, facultado para determinar la competencia de los tribunales y para disponer que **de acudir un litigante a un tribunal distinto al indicado por las leyes sobre competencia, la parte contraria puede solicitar y obtener el traslado de la causa, o el tribunal *motu proprio* puede así disponerlo.**
> ........
> Este sistema judicial unificado que recomendamos eliminará en los litigios las cuestiones técnicas de jurisdicción. **Dentro del sistema que hasta ahora ha prevalecido en Puerto Rico a menudo se derrotaban los fines de la justicia y se perjudicaban irremediablemente los derechos de litigantes por haber éstos acudido a tribunales que según dicho sistema carecían, por razones sumamente técnicas, de jurisdicción para conocer en su causa.** Frecuentemente se descubría el error técnico cuando ya el litigante había incurrido en gastos y pérdida de tiempo.  El establecimiento de este sistema judicial unificado que se recomienda eliminará de

---

[16] <u>Caratini</u> v. <u>Collazo Syst. Análisis, Inc.</u>, 2003 T.S.P.R. 1, 2003 J.T.S. 4, 158 D.P.R. __ (2003); <u>Vega *et al*.</u> v. <u>Telefónica</u>, 2002 T.S.P.R. 50, 2002 J.T.S. 58, 156 D.P.R. __ (2002).

[17] Art. V, sec. 2, Const. E.L.A., L.P.R.A., Tomo 1.

manera absoluta todas estas deficiencias. Por otro lado, se reserva al Poder Legislativo la facultad de disponer por ley sobre la competencia de los tribunales incluyendo el lugar donde deben ventilarse los litigios. **Un error por razón de competencia podrá siempre ser subsanado a petición de las partes o por disposición del tribunal sin que se perjudiquen fatalmente los derechos de los litigantes.** También se reserva al Poder Legislativo la facultad de crear nuevos tribunales o de abolir los existentes con excepción del Tribunal Supremo (énfasis suplido).[18]

De otra parte, el alcance del sistema judicial unificado, según lo explicara el Presidente de dicha Convención, doctor Antonio Fernós Isern es el siguiente:

[l]a única cuestión concreta es que **en todo sistema de justicia integral existe una sola corte. Si el sistema está integrado, tiene competencia y tiene jurisdicción dondequiera que se radique sin perjuicio de que se le conceda por ley el derecho a traslado si la parte lo pide. No sería cuestión de perder los derechos de apelación, los derechos obtenidos** (énfasis nuestro).[19]

Asimismo, el licenciado José Trías Monge, en su obra El Sistema Judicial de Puerto Rico[20], al analizar el artículo V de la Constitución de Puerto Rico y su implementación bajo la Ley de la Judicatura de 1952 expresó lo siguiente:

**El artículo V de la Constitución de Puerto Rico consagró, como hemos señalado, el principio de la unificación de los tribunales. La Asamblea Legislativa retuvo el poder de crear nuevas cortes, pero su totalidad constituiría necesariamente un solo conjunto** (énfasis suplido).[21]

El licenciado Trías Monge añadió que:

---

[18] 4 Diario de Sesiones de la Convención Constituyente, págs. 2609-2610 (Edición Conmemorativa, 2003).

[19] Diario de Sesiones, *supra*, pág. 602.

[20] J. Trías Monge, El Sistema Judicial de Puerto Rico, San Juan, Ed. Universitaria, 1978.

[21] J. Trías Monge, *op. cit.*, pág. 177.

…**nuestro actual artículo V no deja lugar a dudas que se está creando un sistema unificado, lo que obviamente equivale al establecimiento del tribunal único.** Faltó tan sólo bautizarlo, lo cual se hizo en la Ley de la Judicatura. Aun bajo la Constitución actual, sin embargo, **resulta claro que cualquier tribunal que se establezca forma parte del sistema unificado a todos los fines que la Constitución dispone** (énfasis nuestro).[22]

También manifestó lo siguiente:

Un objetivo central de esta ley [de la Judicatura de 1952] era **eliminar el oscuro concepto de "jurisdicción", causa de que se frustrase en muchos casos, por la fijación de rígidas fronteras artificiales, la causa de la justicia.** La ley de la judicatura evitó cuidadosamente utilizar dicho concepto, sustituyéndolo por el de "competencia". **Dentro de la teoría de un sistema unificado, cualquier parte del sistema tiene jurisdicción para resolver una causa.** El volumen de trabajo, no obstante, se distribuye mediante reglas flexibles de competencia (énfasis añadido).[23]

Por otro lado, la Ley de la Judicatura de 2003[24], la cual implementa actualmente las disposiciones del referido artículo V de la Constitución, dispone lo siguiente:

**El Poder Judicial del Estado Libre Asociado de Puerto Rico constituirá un sistema judicial unificado en lo concerniente a jurisdicción, funcionamiento y administración. Estará compuesto por el Tribunal Supremo como tribunal de última instancia, el Tribunal de Apelaciones como tribunal intermedio y por el Tribunal de Primera Instancia, los que conjuntamente constituirán el Tribunal General de Justicia. El Estado Libre Asociado de Puerto Rico estará constituido en un solo distrito judicial sobre el cual el Tribunal General de Justicia ejercerá su poder y autoridad** (énfasis nuestro).[25]

---

[22] Íd., pág. 187.

[23] Íd., pág. 136.

[24] Ley Núm. 201 de 22 de agosto de 2003, según enmendada, 4 L.P.R.A. sec. 24 *et seq.*

[25] Ley Núm. 201, *supra*, 4 L.P.R.A. sec. 24b.

En cuanto al Tribunal de Apelaciones se refiere, dicha ley le otorgó competencia en recursos de *certiorari* para revisar resoluciones y órdenes del Tribunal de Primera Instancia.[26] Por su parte, la Regla 53.1 de Procedimiento Civil[27] establece que el recurso de *certiorari* se formaliza mediante su presentación dentro de los treinta (30) días siguientes a la fecha de la notificación de la resolución u orden del foro primario. El referido término es de cumplimiento estricto, prorrogable sólo cuando median circunstancias especiales debidamente sustentadas en la solicitud de *certiorari*.[28]

En términos de su lugar de presentación, la Regla 53.1, *supra*, permite que los recursos de *certiorari* se presenten tanto en el Tribunal de Apelaciones como en la Secretaría de la sede del Tribunal de Primera Instancia que resolvió la controversia objeto de revisión. Así, la referida regla dispone que en caso de que el recurso se presente en la Secretaría de la sede recurrida del Tribunal de Primera Instancia, el peticionario deberá notificar a la Secretaría del Tribunal de Apelaciones, dentro de las cuarenta y ocho (48) horas siguientes a la presentación inicial del recurso,

---

[26] Ley Núm. 201, *supra*, 4 L.P.R.A. sec. 24(y).

[27] 32 L.P.R.A. Ap. III.

[28] Íd.

el número reglamentario de copias debidamente selladas con la fecha y hora de esa presentación inicial.

Por su parte, la Regla 33 del Reglamento Transitorio del Tribunal de Apelaciones de 18 de noviembre de 2003[29], aplicable al presente caso, en armonía con la Regla 53.1 de Procedimiento Civil, *supra*, permitía que los recursos de *certiorari* se presentaran tanto en el Tribunal de Apelaciones como en la Secretaría de la sede recurrida del Tribunal de Primera Instancia. Cabe destacar que la nueva Regla 33 del Reglamento del Tribunal de Apelaciones de 2004 se expresa, sobre el particular, en idénticos términos.[30]

Específicamente, a la fecha en que el señor Freire Ayala presentó su recurso de *certiorari*, la Regla 33 del Reglamento Transitorio del Tribunal de Apelaciones disponía lo siguiente:

> **De presentarse el recurso de *certiorari* en la Secretaría de la sede del Tribunal de Primera Instancia en la cual se resolvió la controversia objeto de revisión, la Secretaría del tribunal recurrido retendrá una copia del escrito de *certiorari*, sin apéndice, y la parte peticionaria notificará a la Secretaría del Tribunal de Apelaciones dentro de las cuarenta y ocho (48) horas siguientes a la presentación de la solicitud, el original** del escrito con el arancel cancelado **y tres (3) copias** del mismo debidamente selladas por la Secretaría del tribunal recurrido con la fecha y hora de su presentación. Los **términos** aquí dispuestos serán de **cumplimiento estricto** (énfasis añadido).

---

[29] Éste era el Reglamento vigente a la fecha en que el señor Freire Ayala presentó su recurso de *certiorari*. Fue derogado el 20 de julio de 2004, mediante la aprobación del nuevo Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B R. 1-89 (2004).

[30] 4 L.P.R.A. Ap. XXII-B.

Es menester señalar que desde la aprobación de la hoy derogada Ley de la Judicatura de 1994[31], la Legislatura ha tenido la intención y propósito de facilitar a las partes el acceso a la justicia apelativa, permitiendo que los recursos en alzada para la revisión de sentencias y resoluciones del Tribunal de Primera Instancia se presenten en la Secretaría de la sede de dicho tribunal que resolvió el asunto. Así, bajo el esquema constitucional de un sistema judicial unificado, el legislador le confirió al Tribunal de Primera Instancia, para fines de la presentación de tales recursos, características similares a la Secretaría del Tribunal de Apelaciones.[32] Este principio de mayor acceso a la justicia apelativa fue reafirmado mediante la aprobación de la Ley de la Judicatura de 2003, *supra*, cuando el legislador dispuso lo siguiente:

> **El Tribunal de Apelaciones deberá cumplir con el objetivo de este capítulo de dar mayor acceso a la ciudadanía a los procesos judiciales.** Deberá ofrecer acceso fácil, económico y efectivo a sus procedimientos, **eliminando obstáculos y barreras que impidan impartir justicia apelativa a los ciudadanos con reclamos válidos** (énfasis suplido).[33]

Asimismo, dicho estatuto autorizó al Tribunal Supremo a aprobar un reglamento rector de los procedimientos y organización del Tribunal de Apelaciones, que contuviera

---

[31] Plan de Reorganización de la Rama Judicial, Ley Núm. 1 de 28 de julio de 1994, según enmendada, 4 L.P.R.A. ant. secs. 22-23n.

[32] Acevedo v. E.L.A., 150 D.P.R. 866 (2000).

[33] Ley Núm. 201, *supra*, 4 L.P.R.A. sec. 24u.

**"reglas dirigidas a reducir al mínimo el número de recursos desestimados por defectos de forma o de notificación…"**[34]    Al aprobar en el año 2003 el Reglamento Transitorio del Tribunal de Apelaciones, *supra*, dispusimos en su Regla 2 lo siguiente:

> …[E]ste Reglamento está dirigido a: (1) **Ofrecer acceso fácil, económico y efectivo al Tribunal, eliminando obstáculos y barreras que impidan impartir justicia apelativa a los ciudadanos con reclamos válidos** (énfasis nuestro).

Del mismo modo, establecimos en la Regla 12(A) del referido Reglamento lo siguiente:

> Las disposiciones sobre los requisitos de notificación a las partes y al Tribunal y los de forma dispuestos en el Reglamento del Tribunal de Apelaciones de 1996, en las Reglas de Procedimiento Civil, Reglas de Procedimiento Criminal para los recursos de apelación, *certiorari* y de revisión judicial, **deberán interpretarse de forma que se reduzcan al mínimo las desestimaciones de los recursos.** Deberá el Tribunal de Apelaciones proveer oportunidad razonable para la corrección de defectos de forma o de notificación que no afecten los derechos de las partes (énfasis añadido).[35]

Con este amplio marco constitucional y procesal reglamentario en mente, pasamos directamente a responder la interrogante que levantamos al comenzar la discusión de esta segunda (II) parte de la Opinión.  Ello, en aras de resolver si el Tribunal de Apelaciones actuó con jurisdicción sobre el recurso de *certiorari* que ante él presentara el señor Freire Ayala.

---

[34] Ley Núm. 201, *supra*, 4 L.P.R.A. sec. 24w.

[35] En términos casi idénticos redactamos las Reglas 2 y 12.1 del Reglamento del Tribunal de Apelaciones de 2004, *supra*.

En el presente caso, la Sala Superior de la sede de San Juan del Tribunal de Primera Instancia dictó una resolución mediante la cual desestimó sumariamente la reclamación salarial del señor Freire Ayala. El día treinta (30), luego de notificada y archivada en autos la referida resolución, éste presentó en la Secretaría de la sede de Ponce del Tribunal de Primera Instancia un recurso de *certiorari*. Dentro de las veinticuatro (24) horas siguientes a dicha presentación, el señor Freire Ayala notificó al Tribunal de Apelaciones el original del escrito con el arancel cancelado y las copias reglamentarias del mismo selladas con la fecha y hora de su presentación inicial.

En su resolución, el Tribunal de Apelaciones no discute ni hace alusión alguna a la presentación inicial del recurso de *certiorari* en la Secretaría de la sede de Ponce del Tribunal de Primera Instancia. No indica si se percató o no de dicha presentación. No surge de su resolución si la tomó o no en consideración. Al resolver la moción de desestimación presentada por Rent a Center se limitó a expresar que, en interés de la justicia, atendería en los méritos el recurso, toda vez que la radicación en el Tribunal de Apelaciones un (1) día en exceso del término para hacerlo no había ocasionado perjuicio indebido a ninguna de las partes. Sin embargo, erró al asumir jurisdicción en el recurso bajo ese fundamento. En todo caso, es norma jurisprudencial que un término de cumplimiento estricto sólo puede prorrogarse por justa causa, y únicamente cuando la

parte la demuestra en la solicitud de *certiorari* con explicaciones particulares y concretas.[36]

Por su parte, Rent a Center tampoco discute en su alegato el efecto, si alguno, de la presentación inicial del referido recurso en la Secretaría de la sede de Ponce del Tribunal de Primera Instancia. Más bien, hace abstracción de la misma y plantea que la presentación en el Tribunal de Apelaciones vencido por un (1) día el término de cumplimiento estricto, en ausencia de acreditación de justa causa, con explicaciones concretas y particulares, debidamente evidenciadas en el escrito de *certiorari*, impedía al foro intermedio apelativo asumir jurisdicción sobre el recurso en cuestión.

Concluimos que la presentación de un recurso de *certiorari* dentro del término de cumplimiento estricto, en una sede del Tribunal de Primera Instancia que no es la sede recurrida de dicho tribunal, tiene la misma eficacia jurídica, por virtud del principio constitucional de jurisdicción judicial unificada, que la presentación del mismo en la sede recurrida del mencionado tribunal. Veamos.

Es un hecho que el ordenamiento procesal civil apelativo faculta, de forma expresa, a la Secretaría de la sede del Tribunal de Primera Instancia en la cual se resolvió la controversia objeto de revisión, para recibir el recurso de *certiorari*, como lugar alternativo a la Secretaría del

---

[36] Mun. de Carolina v. Reyes *et al.*, 151 D.P.R. 897 (2000); Rojas Lugo v. Axtmayer Enterprises, Inc., 150 D.P.R. 560

Tribunal de Apelaciones. No obstante, el que dicho ordenamiento no le de facultad **expresa** para ello a ninguna otra sede del referido tribunal no puede tener el efecto de derrotar el esquema constitucional de un sistema judicial unificado, en cuanto a jurisdicción.

Desde la aprobación de la Constitución de Puerto Rico en el año 1952 y la Ley de la Judicatura de ese mismo año, nuestros tribunales dejaron de funcionar como células u órganos separados e independientes. A partir de ese momento, pasaron a formar una sola organización, un solo conjunto, un tribunal único, bautizado con el nombre de Tribunal General de Justicia, hoy compuesto por el Tribunal Supremo, el Tribunal de Apelaciones y el Tribunal de Primera Instancia. Por tal razón, la presentación inicial de un recurso de *certiorari* dentro del término de cumplimiento estricto en la Secretaría de una sede del Tribunal de Primera Instancia que no está expresamente facultada a recibirlo por las reglas procesales aplicables, no puede provocar la pérdida del derecho del **ciudadano** litigante.

Enfatizamos que en el caso ante nos, el recurso se presentó dentro del término de cumplimiento estricto aplicable ante el Tribunal de Primera Instancia, y se notificó al Tribunal de Apelaciones, también dentro del término de cumplimiento estricto correspondiente. La novedad del caso estribó en que el recurso no se presentó en la Secretaría de la sede del Tribunal de Primera Instancia que

(2000); <u>Arriaga v. F.S.E.,</u> 145 D.P.R. 122 (1998).

resolvió la controversia objeto de revisión, sino en la Secretaría de otra sede del mismo tribunal. No obstante, y como hemos señalado, ambas Secretarías son componentes inseparables del esquema constitucional de un sistema judicial unificado en cuanto a jurisdicción.

Por tanto, determinamos que ante la presentación de un recurso de *certiorari* en las circunstancias del caso ante nosotros, por imperativo del principio constitucional de jurisdicción judicial unificada, procede lo siguiente: (1) la transferencia administrativa del referido recurso por parte de la Secretaría de la sede del Tribunal de Primera Instancia que lo recibió a la Secretaría de la sede recurrida de dicho tribunal y (2) la notificación por parte del peticionario del original del escrito con el arancel cancelado y sus copias reglamentarias a la Secretaría del Tribunal de Apelaciones, dentro de las cuarenta y ocho (48) horas siguientes, de conformidad con la Regla 53.1 de Procedimiento Civil, *supra*, y el Reglamento del Tribunal de Apelaciones, *supra*. Cumplido este trámite, se entiende oportuna y perfeccionada la presentación del recurso.

A la luz de todo lo anterior, resolvemos que la presentación del recurso de *certiorari* del señor Freire Ayala en la Secretaría de la sede de Ponce del Tribunal de Primera Instancia bajo las circunstancias descritas fue eficaz en derecho. Así las cosas, aunque por el fundamento equivocado, actuó correctamente el Tribunal de Apelaciones al ejercer su

jurisdicción sobre el mismo. En vista de que la revisión se produce contra la resolución recurrida y no contra sus fundamentos, confirmamos al Tribunal de Apelaciones en cuanto al primer señalamiento de error se refiere.[37] Al así resolver, honramos la Constitución y continuamos fomentando la eliminación de barreras que impiden impartir justicia apelativa, facilitando el acceso a la misma en nuestro sistema judicial unificado. Al mismo tiempo, reafirmamos nuestros pronunciamientos a los efectos de que, en lo posible, las controversias judiciales deben resolverse en los méritos.[38]

**B. Principio constitucional de administración y funcionamiento judicial unificado; autoridad constitucional para adoptar reglas procesales apelativas, y de administración interna.**

Como mencionamos previamente, la sección 2 del artículo V de nuestra Constitución no sólo concibe nuestro sistema judicial como uno unificado en términos de jurisdicción, **sino también en lo concerniente a su funcionamiento y administración.**[39] La Comisión de la Rama Judicial de la Convención Constituyente recomendó semejante integración a los fines de asegurar el logro de las metas siguientes:

1) **Mayor eficiencia en el ejercicio del poder judicial.**

---

[37] Pueblo v. Pérez Rodríguez, 2003 T.S.P.R. 93, 2003 J.T.S. 96, 159 D.P.R. __ (2003); Asoc. Pesc. Pta. Figueras v. Pto. del Rey, 155 D.P.R. 906 (2001); Perez Vda. Muñiz v. Criado, 151 D.P.R. 355 (2000).

[38] Vega v. Caribe G. E. 2003 T.S.P.R. 174, 2003 J.T.S. 175, 160 D.P.R. __ (2003).

[39] Art. V, sec. 2, Const. E.L.A., *supra*.

2) Distribución equitativa del trabajo de los tribunales que permita la mayor rapidez en los procedimientos judiciales evitando la congestión de causas pendientes en los tribunales.

3) Énfasis en el principio de especialización de jueces en lugar de la especialización de tribunales, evitándose así la necesidad de tribunales o salas adicionales o de crear un número excesivo de plazas de jueces.

4) Reducción del costo por caso al erario público.

5) **La mayor flexibilidad en la administración de la justicia.**[40]

Contemporáneo a la aprobación de la Constitución, se hicieron las expresiones siguientes sobre el alcance de dicha sección:

> La sección 2 provee, además [de la eliminación de los problemas técnicos de jurisdicción], que los tribunales constituirán **un sistema unificado para propósitos de operación y administración. Éstos extremos son implementados por las secciones 6 y 7** discutidas más abajo (traducción y énfasis nuestro).[41]

La sección 6 del artículo V de la Constitución lee de la manera siguiente:

> **§ 6. [Reglas de evidencia y de procedimiento civil y criminal]**
>
> **El Tribunal Supremo adoptará**, para los tribunales, **reglas** de evidencia y **de procedimiento civil** y criminal que no menoscaben, amplíen o modifiquen derechos sustantivos de las partes. Las reglas así adoptadas se remitirán a la Asamblea Legislativa al comienzo de su próxima sesión ordinaria y regirán sesenta días después de la terminación de dicha sesión, salvo desaprobación por la Asamblea

---

[40] Diario de Sesiones, *supra*, pág. 2609.

[41] Notes & Comments on the Constitution of the Commonwealth of Puerto Rico, Washington D.C., 1953, pág. 88. La cita en idioma inglés lee textualmente: "Section 2 also provides that the courts shall constitute a unified system for purposes of operation and administration. These ends are implemented by sections 6 and 7 discussed below".

Legislativa, la cual tendrá facultad, tanto en dicha sesión como posteriormente, para enmendar, derogar o complementar cualquiera de dichas reglas, mediante ley específica a tal efecto (énfasis añadido).[42]

Sobre la referida sección, el Informe de la Comisión de la Rama Judicial de la Convención Constituyente expresó que recomendó **elevar a categoría constitucional la facultad del Tribunal Supremo para adoptar reglas de procedimiento, haciendo claro que ese poder no conllevaba en forma alguna el de modificar o alterar, en virtud de esas reglas, derechos sustantivos.**[43]  Respecto a la misma sección se dijo, además:

**Esta concesión de poder al Tribunal Supremo para iniciar reglas de procedimiento** y evidencia para los tribunales **ayuda a implementar la sección 2, que establece un sistema judicial unificado** (traducción y énfasis suplido).[44]

Por su parte, la sección 7 del artículo V del Magno Documento dispone:

**§ 7. [Reglas de evidencia y de procedimiento civil y criminal].**

**El Tribunal Supremo adoptará reglas para la administración de los tribunales** las que estarán sujetas a las leyes relativas a suministros, personal, asignación y fiscalización de fondos, y a otras leyes aplicables en general al gobierno.  El Juez Presidente dirigirá la administración de los tribunales y nombrará a un director administrativo, quien desempeñará su cargo a discreción de dicho magistrado (énfasis nuestro).[45]

---

[42] Art. V, sec. 6, Const. E.L.A., *supra*.

[43] Diario de Sesiones, *supra*, pág. 2612.

[44] Notes & Comments on the Constitution of the Commonwealth of Puerto Rico, *op cit*., pág. 91.  La cita en idioma inglés lee textualmente: "This grant of power to the Supreme Court to initiate rules of procedure and evidence for the courts helps to implement Section 2 which establishes a unified court system".

[45] Art. V, sec. 7, Const. E.L.A., *supra*.

El Lcdo. Ernesto Ramos Antonini, Delegado a la Convención Constituyente expresó, como parte del debate de la Convención, que el propósito de la citada sección 7:

> …es el de que la responsabilidad de la administración de los tribunales de justicia recaiga en el presidente del Tribunal Supremo...**De manera que a quien hay que proteger aquí es, en primer término, al poder judicial, en el sentido de garantizarle eficiencia en su funcionamiento por su administración** (énfasis añadido).[46]

Por otro lado, en el Informe de la Comisión de la Rama Judicial de la Convención Constituyente se indicó que se recomendó traspasar al Tribunal Supremo la facultad de administrar los tribunales de justicia de Puerto Rico, pues antes era ejercida por un ente del poder ejecutivo, la Oficina del Procurador General. Entendió la Comisión que la referida sección 7 contenía disposiciones básicas para la consecución de la independencia del poder judicial, e hizo constar que el término **"administración"**, usado en la misma, **comprendía**, entre otras funciones, la de **aprobar reglamentos para la eficiente administración de la Rama Judicial**.[47] En ese sentido, la administración centralizada del sistema llevó la idea de la unificación judicial a una forma más efectiva de lo que hasta entonces se había logrado en otras jurisdicciones.[48]

---

[46] Diario de Sesiones, *supra*, pág. 1667.

[47] Íd., pág. 2613.

[48] J. Trías Monge, *op. cit.*, pág. 133.

Al amparo de las facultades constitucionales antes discutidas, y como hemos visto, de forma consustancial con el sistema judicial unificado que nos rige, este Tribunal adoptó las vigentes Reglas de Procedimiento Civil de 1979, convertidas en ley por la Asamblea Legislativa. Entre ellas, la Regla 53.1, *supra*, que según analizamos antes, permite que los recursos de *certiorari* se presenten tanto en el Tribunal de Apelaciones **como en la Secretaría de la sede del Tribunal de Primera Instancia que resolvió la controversia objeto de revisión.** Según señalamos previamente, a tenor con la Ley de la Judicatura de 2003, *supra*, esta Curia promulgó, además, el Reglamento del Tribunal de Apelaciones de 2004.[49] Dicho cuerpo reglamentario complementa la normativa formulada por las reglas de procedimiento respecto a la práctica apelativa ante dicho tribunal, que incluye la tramitación de recursos de *certiorari* como el de hoy ante nos. Tal y como manifestamos anteriormente, en armonía con la aludida Regla 53.1 de Procedimiento Civil, *supra*, el referido Reglamento permite que los recursos de *certiorari* se presenten tanto en el Tribunal de Apelaciones como en la Secretaría **de la sede recurrida del Tribunal de Primera Instancia.**

Para poder encaminar el funcionamiento de nuestro sistema judicial de manera ordenada, y con el fin de evitar socavar su estructura y organización, es imperioso que los procesos judiciales se tramiten con la más absoluta y fiel

---

[49] Véase nuevamente Ley Núm. 201, *supra*, 4 L.P.R.A. sec. 24w.

adherencia a las Reglas de Procedimiento Civil y los reglamentos de práctica apelativa que hemos cuidadosamente confeccionado. Así las cosas, **la opción de presentar el recurso de apelación o *certiorari* en la Secretaría del Tribunal de Primera Instancia requiere que dicha presentación se haga**, según el texto literal de las Reglas de Procedimiento Civil y las del Reglamento del Tribunal de Apelaciones de 2004. Esto es, **en la Secretaría de la sede del Tribunal de Primera Instancia que dictó la sentencia apelada o la resolución recurrida. Deberá cumplirse estrictamente esta directriz.**

La decisión a la que hoy llegamos con respecto al recurso de *certiorari* del señor Freire Ayala, bajo ninguna circunstancia puede ser interpretada como una licencia para que los abogados presenten recursos apelativos en Secretarías de sedes del Tribunal de Primera Instancia sin competencia o sin facultad reglamentaria expresa para recibirlos. Ello provocaría que nuestro sistema judicial sufra una grave dislocación en su organización y funcionamiento que no habremos de permitir. **El abogado** del litigante que así actúe, debidamente apercibido está de que su proceder representa un abierto desafío al ordenamiento procesal apelativo que viene obligado a obedecer y respetar.

Por tanto, **el abogado** que en el futuro incurra en la conducta aquí desplegada por el representante legal del señor Freire Ayala será sancionado con una cancelación arancelaria

adicional de $400, para beneficio de la sede del Tribunal de Primera Instancia donde se presente el recurso. Queremos dejar firmemente establecido que la piedra angular sobre la cual está fundada nuestra facultad reguladora y disciplinaria sobre los abogados y jueces es, precisamente, el principio constitucional de un sistema judicial unificado en las áreas de administración y funcionamiento. No podemos perder de perspectiva que el eficiente funcionamiento de nuestro sistema judicial depende, inexorablemente, del íntegro, leal, diligente y responsable desempeño de nuestra clase togada.

III

Mediante los señalamientos de error segundo y tercero, Rent a Center arguye que el Tribunal de Apelaciones erró al revocar la "Sentencia Sumaria Parcial"[50] emitida por el Tribunal de Primera Instancia. Sostiene que dicho tribunal incidió al concluir que en el caso estaba en controversia si el señor Freire Ayala era o no un empleado exento. Le imputa, además, errar al resolver que el contrato de empleo entre las partes era ambiguo e incapaz de revelar la intención de éstas al contratar. Arguye que el mecanismo de sentencia sumaria parcial era el idóneo para disponer de la reclamación salarial del demandante. Por estar íntimamente relacionados entre sí, discutiremos ambos señalamientos de error conjuntamente.

---

[50] Véase nota al calce 10.

La sentencia sumaria es el mecanismo procesal que confiere al juzgador discreción para dictar sentencia sin necesidad de celebrar una vista en sus méritos. El tribunal, en el ejercicio de su discreción, puede dictarla cuando de los documentos admisibles en evidencia que se acompañan con la solicitud de sentencia sumaria, o que obran en el expediente del tribunal, surge que no existe una legítima controversia de hechos materiales y esenciales que tenga que ser dirimida en una vista evidenciaria y que sólo resta aplicar el derecho.[51]

De existir controversia real en relación con hechos materiales y esenciales, no debe dictarse y cualquier duda en torno a los mismos debe resolverse en contra de la parte promovente de la moción, concediendo a la parte promovida el derecho a un juicio en su fondo.[52] En vista de ello, el mecanismo de sentencia sumaria sólo debe utilizarse cuando el promovente ha establecido su derecho con claridad y ha quedado demostrado que el promovido no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de la prueba.[53] Por otro lado, un tribunal, en el sano ejercicio de su discreción, debe abstenerse de resolver

---

[51] Regla 36 de Procedimiento Civil, 32 L.P.R.A., Ap. III, Rivera Rodríguez v. Rivera Reyes 2006 T.S.P.R. 103, 2006 J.T.S. 112, 167 D.P.R. __ (2006); Malavé v. Oriental, 2006 T.S.P.R. 63, 2006 J.T.S. 72, 167 D.P.R. __ (2006) y García v. Darex P.R., Inc., 148 D.P.R. 364, 382 (1999).

[52] Bonilla Medina v. P.N.P., 140 D.P.R. 294 (1996); Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272 (1990).

[53] Rivera Rodríguez v. Rivera Reyes, *supra*, Malavé v. Oriental, *supra*; Medina v. Merck, 134 D.P.R. 234 (1993).

mediante el mecanismo de sentencia sumaria controversias en las que subyacen elementos subjetivos de intención, propósitos mentales o negligencia, y cuando el factor credibilidad sea esencial.[54]

De otra parte, el derecho de los trabajadores a recibir compensación extraordinaria por trabajo realizado en exceso de una jornada de trabajo de ocho (8) horas diarias, es, en Puerto Rico, de origen constitucional. La Sección 16 del Artículo II de la Constitución de Puerto Rico dispone que cuando un trabajador labora por más de ocho (8) horas diarias tiene derecho a recibir una compensación extraordinaria por el tiempo trabajado en exceso de ese límite, "que nunca será menor de una vez y media el tipo de salario ordinario, según se disponga por ley".[55]

La Ley de Horas y Días de Trabajo de Puerto Rico, Ley Núm. 379, *supra*, implementa concretamente la referida disposición constitucional. En lo pertinente, dicha ley dispone que ocho (8) horas de labor constituyen la jornada legal diaria de trabajo, y añade que, cuarenta (40) horas de labor constituyen la jornada legal semanal de trabajo. Establece, además, que son horas extras, las trabajadas en exceso de ocho (8) en un periodo de veinticuatro (24) horas.

---

[54] <u>Rivera Rodríguez</u> v. <u>Rivera Reyes</u>, *supra*, <u>Rosario</u> v. <u>Nationwide Mutual</u>, 2003 T.S.P.R. 32, 2003 J.T.S. 34, 158 D.P.R. __ (2003); <u>Santiago</u> v. <u>Ríos Alonso</u>, 2002 T.S.P.R. 15, 2002 J.T.S. 21, 156 D.P.R. __ (2002); <u>Soto</u> v. <u>Hotel Caribe Hilton</u>, 137 D.P.R. 294 (1994).

[55] Art. II, sec. 16, Const. E.L.A., L.P.R.A., Tomo 1.

Asimismo, establece que son horas extras, las trabajadas en exceso de cuarenta (40) a la semana. Por otro lado, la referida ley consagra el derecho a disfrutar de un periodo para tomar alimentos que, como regla general, debe concederse después de concluida la tercera hora de trabajo y antes de comenzar la sexta hora de trabajo consecutivo. Dispone que el patrono que requiera o permita que un trabajador labore durante horas extras viene obligado a pagarle una compensación extraordinaria igual al doble o igual a, por lo menos, tiempo y medio del tipo convenido para las horas regulares, dependiendo de las circunstancias envueltas, según se especifica en su artículo 6. También dispone que el patrono que requiera o permita que un trabajador labore durante el periodo destinado para tomar alimentos viene obligado a pagarle por dicho periodo o fracción del mismo un tipo de salario igual al doble del tipo convenido para las horas regulares.[56]

Por otro lado, la ley establece que el trabajador que reciba una compensación inferior a la que en ella se fija para las horas extras y el periodo de tomar alimentos, tendrá derecho a recobrar de su patrono, mediante acción civil, las cantidades no pagadas, más una suma igual **por concepto de liquidación de daños y perjuicios**, además de las costas, gastos y honorarios de abogados del procedimiento.[57]

---

[56] Véanse: Arts. 2, 4, 6, y 15 de la Ley Núm. 379, *supra*, 29 L.P.R.A. secs. 271, 273, 274 y 283.

[57] Artículo 14 de la Ley Núm. 379, *supra*, 29 L.P.R.A. sec. 282.

Ley Núm. 379, *supra*, **excluyó** de sus disposiciones a los ejecutivos, administradores y profesionales, lo que implica que la ley **no les cobija**; es inaplicable a éstos.[58] El legislador delegó en la extinta Junta de Salario Mínimo de Puerto Rico la labor de definir quiénes son estos empleados.[59] Mediante la aprobación del Reglamento Núm. 13[60], la referida Junta definió dichos términos. Se trata de los denominados empleados exentos. Es a dicho Reglamento al que debemos acudir para determinar si un empleado clasificado por su patrono como "ejecutivo" lo es, verdaderamente. De llenar los requisitos que establece el Reglamento, dicho empleado sería uno exento, carente de derecho a jornadas máximas de labor, a paga por horas extras y al disfrute del periodo de tomar alimentos.[61]

Constituye un principio de nuestra infraestructura jurídica laboral el que solamente por excepción se excluya a un trabajador de la protección que su carácter de empleado le proporciona.[62] Así, para que surja la condición de

---

[58] Artículo 20, 29 L.P.R.A. sec. 288.

[59] Íd.

[60] Reglamento 4267, Cuarta Revisión (1990). Es inaplicable a los hechos de este caso la Quinta Revisión que entró en vigor el 17 de febrero de 2006.

[61] Santiago Matos v. Commonwealth Oil Refining Co., 114 D.P.R. 267 (1983).

[62] Sánchez v. Best Price Co., Inc., 102 D.P.R. 379 (1974); López Santos v. Tribunal Superior, 99 D.P.R. 325 (1970).

"ejecutivo" exento es necesario que concurran todos los requisitos que el Reglamento Núm. 13, *supra*, enumera.[63]

---

[63] A la fecha de los hechos, el Reglamento Núm. 13, *supra*, definía el término "ejecutivo" de la manera siguiente:

"Artículo IV Definición de 'Ejecutivo'

A los fines de la sección 30(b) de la Ley de Salario Mínimo de Puerto Rico (Ley 96 de 26 de junio de 1956, enmendada) el término ejecutivo significa:

A. En Todas las Actividades Excepto Agrícolas

Cualquier empleado que reúna los siguientes requisitos:

(a) que tenga por deber primordial la dirección de la empresa en que trabaja o de un usualmente reconocido departamento o subdivisión de la empresa; y
(b) que usual y regularmente dirija el trabajo de dos o más empleados de la empresa o departamento o subdivisión de la misma; y
(c) que tenga la autoridad de emplear y despedir empleados, o cuyas sugestiones o recomendaciones sobre el empleo, despido, mejoramiento, ascenso o cualquier otro cambio en el status de éstos hayan de recibir especial consideración; y
(d) que usual y regularmente ejerza facultades discrecionales; y
(e) que no dedique más del 20%, o en el caso de un empleado de un establecimiento de comercio al detal o de servicio, que no dedique hasta el 40% de las horas trabajadas en una semana de trabajo, a actividades que no estén directamente relacionadas con el desempeño del trabajo descrito en el Apartado A, inciso (a) hasta (d) inclusive, de este Artículo IV; disponiéndose que este Inciso (e) no será aplicable en el caso de un empleado que esté encargado de una empresa independiente o de una sucursal de la empresa físicamente separada del establecimiento principal de la misma, o de un empleado que sea dueño de por lo menos el 20% del capital de la empresa en la que esté trabajando;                                              y
(f) que reciba por sus servicios una compensación fija equivalente al sueldo semanal no menor de $200.00, excluyendo alimentos, vivienda u otros servicio;
También significa cualquier empleado cuyo trabajo cumpla con los requisitos dispuestos en los incisos (a)     y     (b)     de     este     Artículo     IV     y

En su alegato, Rent a Center arguye que no está en controversia que el señor Freire Ayala era un "ejecutivo" exento. Sostiene que el propio señor Freire Ayala admitió su estatus exento en el escrito que presentó en el Tribunal de Primera Instancia en oposición a que se dictara sentencia sumaria. Arguye que éste volvió a admitir su condición de empleado exento en el recurso de *certiorari* que presentó en el Tribunal de Apelaciones. Ante tales circunstancias, dice no explicarse cómo el foro intermedio apelativo pudo encontrar la existencia de una controversia de hecho material y esencial sobre el particular. Un examen del expediente ante nos revela que Rent a Center tiene razón. Veamos.

En su escrito en oposición a que se dictara sentencia sumaria, el señor Freire Ayala expresó lo siguiente:

> 7. En relación a la reclamación de horas extras o periodo de tomar alimentos, **no hay controversia alguna que las funciones del demandante eran de índole gerencial**.
> 8. <u>Sin embargo, estas funciones estaban reguladas a 46 horas semanales</u> que fue la [sic] que las partes pautaran [sic] en el contrato de trabajo entre las partes (énfasis nuestro).[64]

Por otro lado, en el recurso de *certiorari* que el señor Freire Ayala presentó en el Tribunal de Apelaciones señaló lo siguiente:

> …[E]l derecho laboral ha evolucionado y se han creado vía legislación medidas adicionales para proteger a la masa trabajadora, tales como la Ley de Salario

---

que reciba por sus servicios una compensación fija equivalente a un salario semanal no menor de doscientos noventa y cinco dólares ($295.00) excluyendo alimentos, vivienda u otros servicios".

[64] Apéndice del recurso de *Certiorari*, pág. 295.

Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico, 29 L.P.R.A sec. 250; <u>Ley de Horas y Días de Trabajo de Puerto Rico</u>, 29 L.P.R.A. sec. 271, Flexitime, 29 L.P.R.A. sec. 282, y otras.
**Sin embargo, el asunto a discutirse aquí es uno que tiene que evaluarse a la luz de las disposiciones generales de los contratos que establece el Código Civil** de Puerto Rico, 31 L.P.R.A. secs. 3371 et seq. [sic] **pues no está en disputa la posición, ni las funciones del cargo, sino la cantidad de horas a que está obligado a trabajar el demandante-peticionario.**
........
Sin embargo [sic] **el Honorable Tribunal de Instancia se limitó a evaluar la clasificación del empleado a base de la definición que ofrece el reglamento 13** de la Junta de Salario Mínimo, **cuando ya el demandante en su deposición había aceptado sus funciones gerenciales** (énfasis nuestro).[65]

El señor Freire Ayala no cuestionó en su recurso de *certiorari* ante el Tribunal de Apelaciones la determinación del Tribunal de Primera Instancia que lo declaró "ejecutivo" exento. Únicamente cuestionó la desestimación de su reclamación de **"horas extras"** [66], aduciendo que tenía derecho a ellas, **al amparo de su contrato individual de trabajo.** El señor Freire Ayala en ningún momento se describe en dicho recurso como un empleado **no exento.** Tampoco argumenta serlo. Por tanto, es un hecho no controvertido que el señor Freire Ayala era un "ejecutivo" de Rent a Center, excluido de la aplicación de la Ley Núm. 379, *supra.*

En vista de que la referida ley es inaplicable a los ejecutivos, es forzoso concluir que el recurrido no tiene derecho **por virtud de ley** a una jornada máxima de trabajo diaria. Tampoco a una jornada máxima de trabajo semanal.

---

[65] Íd., pág. 94-95.

Por tanto, no tiene derecho bajo la concernida ley a paga por horas extras ni por periodos de tomar alimentos trabajados.

**Ahora bien, el señor Freire Ayala invocó ante el Tribunal de Apelaciones la aplicabilidad de su contrato individual de trabajo como fuente de derecho, más allá de las disposiciones de la Ley Núm. 379, *supra*.** Arguyó ante dicho tribunal que la controversia estaba gobernada por el principio de la autonomía de la voluntad contractual. Ante nos, reitera ese planteamiento y sostiene que bajo dicho principio, Rent a Center pactó con él limitar su jornada de trabajo semanal a cuarenta y seis (46) horas. Alega que pactó lo siguiente: trabajar como "Junior Assistant Manager", cuarenta y seis (46) horas semanales, por un salario anual de $19,500. Argumenta que nuestro ordenamiento jurídico, en el campo del derecho laboral, no le impide contratar con su patrono condiciones de trabajo más favorables a las provistas por ley. Afirma que el patrono quebrantó el referido pacto, requiriéndole trabajar, en la práctica, setenta y dos (72) horas semanales.[67] Ante el alegado incumplimiento, reclama como remedio compensación por las horas trabajadas en exceso de la jornada **contractual** de trabajo semanal.[68]

---

[66] Nótese que el señor Freire Ayala tampoco cuestionó la desestimación de la reclamación de paga por periodos de tomar alimentos trabajados.

[67] Véase "Oposición Alegato" de la parte recurrida, pág. 14. Véase, además, transcripción de la deposición tomada al señor Freire Ayala el 22 de julio de 2003, Apéndice del recurso de *Certiorari*, págs. 219-220.

[68] "Oposición Alegato" de la parte recurrida, pág. 16.

Por su parte, Rent a Center sostiene en su Alegato que no se comprometió contractualmente con el señor Freire Ayala a una jornada de trabajo semanal exclusivamente de cuarenta y seis (46) horas, sino a una jornada de trabajo semanal **"usualmente"** de cuarenta y seis (46) horas. Sostiene que el Tribunal de Apelaciones incidió al resolver que el contrato de empleo habido entre las partes era ambiguo y que no revelaba la intención de éstas al suscribirlo. Aduce que, por el contrario, el referido contrato demuestra con claridad que el señor Freire Ayala no tiene derecho **a compensación adicional** por las horas trabajadas en exceso de cuarenta y seis (46) a la semana.

Nos preguntamos, ¿constituye un ejercicio válido en derecho el que un empleado exento suscriba un contrato con su patrono que tenga el efecto de limitar su jornada de trabajo semanal a un número determinado de horas? Si lo es, ¿Cuál es el derecho aplicable a dicha jornada contractual de trabajo semanal? ¿Qué remedios tiene disponible ese empleado exento ante un incumplimiento patronal con el límite contractual de la jornada de trabajo, en circunstancias en que el contrato guarde silencio en cuanto a dicho extremo? Veamos.

Este Tribunal ha resuelto que la legislación protectora del trabajo cristaliza la política pública del Estado sobre los derechos, beneficios y condiciones **mínimas** de trabajo que han de disfrutar los empleados en Puerto Rico. Hemos establecido que ello no constituye un obstáculo ni menoscaba la oportunidad del empleado de obtener **mejores** condiciones de

trabajo mediante la contratación individual o colectiva.[69] Es norma de derecho que en el ámbito de la contratación laboral lo que no está permitido es que un empleado contrate con su patrono, individual o colectivamente, condiciones de trabajo inferiores a las mínimas establecidas en la legislación protectora del trabajo. Hemos puntualizado que cualquier disposición contractual con tal alcance es nula e ineficaz en derecho por ser contraria a la ley, a la moral y al orden público.[70]

Como antes señalamos, un empleado exento, excluido de las disposiciones de la Ley Núm. 379, *supra*, no tiene derecho **legal** a una jornada máxima de trabajo diaria ni semanal. Tampoco derecho legal a compensación por horas extras. Por ello, su patrono puede requerirle trabajar jornadas en exceso de ocho (8) horas diarias, y en exceso de cuarenta (40) a la semana, **sin tener que pagarle compensación adicional** a su salario fijo. En consecuencia, cuando un empleado exento logra limitar a un número determinado de horas su jornada de trabajo semanal mediante contratación individual con su patrono, **con ello está trascendiendo el ámbito de una ley especial que no le cobija**, y está obteniendo, a través de un contrato individual de trabajo, la protección que le niega la ley. Por ser cónsono con la política pública del Estado de fomentar que los empleados alcancen más y mejores derechos, beneficios y condiciones de trabajo, mediante contratación

---

[69] J.R.T. v. Vigilantes, Inc., 125 D.P.R. 581, 590-592 (1990).
[70] Íd.

individual o colectiva con su patrono, tal contrato es totalmente válido en derecho.  En ausencia de ley especial que gobierne **los términos específicos de dicho contrato**, el derecho aplicable al mismo es la doctrina general de las obligaciones y los contratos.

Al adentrarnos en el examen de dicha doctrina, vemos que el artículo 1044 del Código Civil dispone que las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos.[71]  El artículo 1210 del mismo cuerpo legal establece que desde el momento en que se perfecciona un contrato, éste obliga, no sólo al cumplimiento de lo expresamente pactado, **sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley**.[72]  Asimismo, el artículo 1054 del Código Civil dispone que cuando una parte contraviene los términos de un contrato, está sujeta a indemnizar los daños causados.[73] Como norma general, la referida indemnización comprende el valor de la pérdida sufrida y el de la ganancia dejada de obtener por el acreedor.[74]  No obstante, la responsabilidad del deudor de buena fe está limitada a los daños y perjuicios previstos o que se hayan podido prever al tiempo de constituirse la obligación y que sean consecuencia necesaria

---

[71] 31 L.P.R.A. sec. 2994.

[72] 31 L.P.R.A. sec. 3375.

[73] 31 L.P.R.A. sec. 3018.

de su falta de cumplimiento.[75] Por otro lado, hemos resuelto que, de ordinario, no procede un reclamo de angustias y daños mentales en acciones de incumplimiento contractual.[76] Así, para que proceda una acción de daños y perjuicios contractuales es menester que haya mediado un acuerdo de voluntades generador de una obligación, situación o estado de derecho que haya creado unas expectativas a base de las cuales actuaron las partes. **Como norma general, cada parte confía en que la otra cumplirá con lo libremente pactado, conforme al principio de la obligatoriedad de los contratos y de la buena fe. Una acción u omisión negligente o deliberada de una de las partes, que produzca el incumplimiento de la obligación contraída, dará origen a la causa de acción de daños y perjuicios *ex contractu*.**[77]

Como antes dispusiéramos, un empleado exento puede adquirir mediante contratación individual con su patrono, el derecho a una jornada de trabajo semanal limitada a determinado número de horas. Examinada la normativa pertinente en materia de obligaciones y contratos, concluimos que, ante un incumplimiento patronal con los términos y

---

[74] Artículo 1059 del Código Civil, 31 L.P.R.A. sec. 3023.

[75] Artículo 1060 del Código Civil, 31 L.P.R.A. sec. 2994.

[76] A menos que hubieran podido preverse al tiempo de constituirse la obligación y fueran consecuencia necesaria de su falta de cumplimiento. Véase nuevamente el artículo 1060 del Código Civil, *supra*. Además, véase Mattei Nazario v. Vélez & Asoc., 145 D.P.R. 508, 523 (1998) y Camacho v. Iglesia Católica, 72 D.P.R. 353, 363 (1951).

[77] Mattei Nazario v. Vélez & Asoc., *supra*, pág. 522.

condiciones de un contrato de trabajo de esa naturaleza, el empleado perjudicado tiene disponible el remedio de una acción de daños y perjuicios contractuales.[78] Tendría que probar ante el Tribunal de Primera Instancia el incumplimiento del contrato por el patrono y los daños y perjuicios que ha sufrido, como consecuencia del mismo, según reconocidos por nuestro ordenamiento jurídico.

Un examen del contrato de empleo existente entre el señor Freire Ayala y Rent a Center revela que, en efecto, las partes acordaron una jornada de trabajo semanal limitada. El contrato suscrito por ambas partes en papel timbrado de la compañía leía de la manera siguiente:

RENTER'S CHOICE

> Yo, Juan L. Freire Ayala, acepto el empleo que se me está ofreciendo en Renter's Choice de Puerto Rico, Inc. [Rent a Center], en la posición de Jr. Asst. Mgr., **devengando un salario de $19,500 y trabajando 46 horas semanales.** Mi horario es rotativo dependiendo de las necesidades de la tienda que se me asigne. De igual manera se me puede transferir de una tienda a otra si así se requiere. **Usualmente mi horario será de 46 horas semanales y un promedio de 6 días.**
> Firmo que he leído esta forma y estoy de acuerdo con la misma (énfasis suplido).[79]

Surge del transcrito contrato que Rent a Center ofreció y el recurrido aceptó ocupar una posición de título gerencial, devengando un salario anual de $19,500, a cambio

---

[78] El artículo 1077 del Código Civil establece el derecho del perjudicado por un incumplimiento de contrato con obligaciones recíprocas a escoger entre exigir el cumplimiento específico o la resolución de la obligación, con el resarcimiento de los daños y abono de intereses en ambos casos; 31 L.P.R.A. sec. 3052.

[79] Apéndice del recurso de *Certiorari*, pág. 299.

de que éste brindara a la empresa una jornada de trabajo de cuarenta y seis (46) horas semanales. En la última oración del primer párrafo del contrato se vuelve a hacer alusión a las cuarenta y seis (46) horas de labor semanal, ésta vez acompañadas del adverbio "usualmente" y la expresión de que las mismas se trabajarían distribuidas en un promedio de seis (6) días.

En su alegato, Rent a Center argumenta que el uso de dicho adverbio en el lenguaje contractual implica que el recurrido, siendo un ejecutivo exento, podía ser requerido de trabajar, lo mismo más de cuarenta y seis (46) horas semanales como menos de cuarenta y seis (46), a cambio de la misma compensación acordada de $19,500 anuales.[80] Arguye que bajo uno u otro escenario no habría violación contractual. En el suyo, el señor Freire Ayala argumenta que, en el mejor de los escenarios para Rent a Center, el señor Freire Ayala debió trabajar comúnmente o habitualmente cuarenta y seis (46) horas semanales, y no continua o frecuentemente setenta y dos (72) horas semanales, como aduce que ocurrió. Sostiene que en ello precisamente estriba el incumplimiento del contrato.

Habiendo una genuina controversia sobre hechos materiales y esenciales, sobre si se incumplió o no el contrato de empleo suscrito por las partes, se hace necesario concederle a éstas la oportunidad de presentar prueba en un juicio plenario. Aunque por razonamientos distintos, coincidimos con el foro intermedio apelativo en que procedía

revocar la "Sentencia Sumaria Parcial" dictada por el Tribunal de Primera Instancia.

IV

Por los fundamentos antes expuestos y, en vista de que la revisión se produce contra la decisión recurrida y no contra sus fundamentos, confirmamos al Tribunal de Apelaciones.[81] Se devuelve el caso a la Sala Superior de la sede de San Juan del Tribunal de Primera Instancia, para que continúe con los procedimientos a tenor con lo aquí pautado.

Efraín E. Rivera Pérez
Juez Asociado

---

[80] Alegato de la Parte Peticionaria, pág. 33.
[81] Véase nota al calce 37.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan Luis Freire Ayala, *et al*

   Demandantes recurridos

        v.

                                   CC-2004-595

Vista Rent To Own, Inc. *et al*

   Demandados Peticionarios

SENTENCIA

San Juan, Puerto Rico, a 9 de noviembre de 2006.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, y en vista de que la revisión se produce contra la decisión recurrida y no contra sus fundamentos, confirmamos el dictamen revocatorio del Tribunal de Apelaciones. Se devuelve el caso a la Sala Superior de la sede de San Juan del Tribunal de Primera Instancia para que continúe con los procedimientos a tenor con lo aquí pautado.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López, aun cuando está <u>conforme</u> con la Opinión emitida en el presente caso, <u>no</u> suscribe aquella parte de la misma que le impone una sanción arancelaria al abogado que radique su recurso apelativo ante una sede, o sala, del Tribunal de Primera Instancia, distinta a la que resolvió el caso; ello por razón de que, si dicha radicación es cónsona con el mandato constitucional de un sistema judicial unificado, la imposición de una sanción económica resulta ser improcedente.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo